13405

FORD v. ATLANTIC COAST LINE R. CO. *ET AL.*

(168 S. E., 143)

April, 1929.

60

*Messrs. Henry E. Davis,* and *DuRant & Sneeden,* for appellant,

*Messrs. W. C. Davis* and *J. W. Wideman,* for respondent,

May 11, 1932.

The opinion of the Court was delivered by MR. M. L. SMITH, ACTING ASSOCIATE JUSTICE.

On the 1st day of March, 1928, the plaintiff and her husband, George Ford, residents of Mockville, N. C., were returning from Charleston, S. C., to their home by way of Florence, in said State, in a sport model Buick touring car.

Owing to their unfamiliarity with this section of the State, construction and repair work in progress on several public highways in that section, and the necessary use of various detour routes, they failed to pursue the most direct route to Florence, and were directed, upon inquiry, to continue their journey on a public highway, designated as State Highway No. 26, which led through the towns of Manning and Alcolu about five miles apart. This highway crosses Black River swamp near Manning and after emerging therefrom runs parallel to the track of the appellant railroad company which also crosses this swamp, curves to the left, and is practically straight, with an unobstructed view, for about seventeen hundred yards.

At a point about twelve hundred yards from the swamp the railroad track is crossed by another public highway,

designated as State Highway No. 4, which intersects Highway No. 26 at a right angle at a distance of about sixty feet, according to a plat offered in evidence, from the railroad crossing.

On account of construction work on Highway No. 26 between Manning and the City of Sumter, it became necessary for travelers to detour on No. 4 at the point of its intersection with No. 26 and cross the railroad track over the former.

The plaintiff and her husband followed this detour and while in the act of crossing over the railroad track were struck by one of the appellants' north-bound passenger trains resulting in the injuries of which she complains.

This action was commenced on the 6th day of April, 1929, against the Atlantic Coast Line Railroad Company and William Smith, the engineer in charge of the locomotive at the time of the collision, to recover damages in the sum of $25,000.00 for the injuries alleged to have been sustained by the respondent as a result thereof.

The complaint in substance charged a joint negligence and willfulness on the part of the defendants in a number of specifications, one of which alleges a failure to give the signals when approaching a public highway crossing over a railroad track prescribed by Section 4903, Vol. 3, Civil Code of South Carodina (1922), for the regulation of the operation of railroad trains in this State.

The defendants, after certain admissions and denials of liability as charged in the complaint, set up in their answer as affirmative defenses: (1) Contributory negligence on the part of the respondents; (2) contributory willfulness on their part; (3) that the train of the defendant involved in the collision was a regular through passenger train operating between the cities of Charleston and Greenville, S. C., and was, regularly, and on this particular occasion, actually engaged in interstate commerce and in the transportation of interstate passengers and mail, and that Sections 4903

and 4925, Vol. 3, Code of Laws of South Carolina, 1922, as construed by this Court, impose a burden upon, and constitute an unlawful regulation of, interstate commerce in violation of Article 1, Section 8, Paragraph 3, of the Federal Constitution, vesting in the Congress the power to regulate commerce among the several states; and (4) that said sections are in violation of the due process of law and equal protection of the law clauses of the Federal and State Constitutions.

The cause was tried on the issues thus raised at the October, 1929, term of the Court of Common Pleas of Clarendon County before Hon. M. L. Bonham, presiding Judge, and a jury.

The husband of respondent, who was driving the car at the time of the collision, testified, substantially, that rain had fallen on them practically during the entire trip from Charleston and that the day was misty and cloudy; that as he approached the detour sign at or near the intersection of these highways, he looked back to see if a train was approaching and saw nothing; that when he reached the detour sign on account of a "puddle of water" at the turn, he "immediately slowed down"; that when he was in act of making the turn he looked through the side of the car, but saw nothing in that direction; that he then turned to look at the sign before crossing the track and then looked in *every* direction, at a distance not exceeding *thirty* feet from the crossing, to ascertain if a train was approaching, but neither heard nor saw anything whatsoever indicating such approach; that at the time he made the turn into Highway No. 4, he was not exceeding a rate of five miles an hour in speed, with the car "in neutral" and foot on brakes, which were in excellent condition; that he was scarcely moving at all when struck by the engine and that if he had received any warning of the approach of the train he could have easily stopped the car in one-half the distance between the sign and the crossing.

The respondent testified, in substance, that they drove up to the crossing, and, seeing the detour sign pointing toward Florence and the "puddle of water" in the road, they slowed up; that realizing they were near and alongside of a railroad track, but before crossing, they looked back for a train, and seeing nothing, looked at the sign and went on; that the curtains were up, but being a rainy, misty morning, she did the best she could to look for trains, which were hard to see; that she did not hear any whistle blow or a bell sound as the train approached the crossing; that she was listening, and as the motor of the car was running quietly, if the whistle had been blown or the bell sounded they could have heard it; and that she did not see the train until about the time of collision in which she was rendered unconscious from her injuries.

The defendant railroad company, in addition to testimony responsive to other issues involved, offered evidence tending to show that the train involved in the collision was a regular passenger train operating between the cities of Charleston and Greenville, S. C.; that it was engaged regularly, and on this particular occasion actually engaged in the transportation of interstate mail and passengers.

At the close of the testimony, the defendant submitted a motion for a directed verdict in its favor upon the grounds, briefly summarized: (1) That there was no proof of any actionable negligence on the part of the defendants; (2) that there was no evidence of willfulness on their part; (3) that the evidence showed that the injuries complained of were due to the gross contributory negligence of the plaintiff as a proximate cause thereof; and (4) that Sections 4903 and 4925, commonly known as the crossing statute, as construed by this Court, constituted an unlawful attempt to regulate commerce among the states and were in violation of the due process of law and equal protection of the law clauses of the Federal and State Constitutions, which motion was overruled by the presiding Judge.

Certain requests to charge were then submitted to the Court embodying the legal propositions that had been urged against the constitutionality of the foregoing sections of the Code of Laws in the motion for a directed verdict, which instructions were denied by the Court.

The jury found a verdict for the plaintiff for the sum of $7,500.00.

A motion for a new trial was made upon the insufficiency of the evidence adduced and upon all the grounds urged in support of the motion for a directed verdict, which was overruled.

Judgment for the plaintiff was duly entered upon this verdict, and from this judgment this appeal is taken upon numerous exceptions which present for the consideration of the Court but five controlling questions, namely: (1) Whether the testimony adduced was sufficient in probative force to require a submission of the case to the jury; (2) whether the presiding Judge erroneously defined "gross negligence"; (3) whether Sections 4903 and 4925, Volume 3, Code of Laws of South Carolina, 1922, as construed by this Court, are in violation of the due process of law clause of the State Constitution (Article 1, § 5); (4) whether such sections, as thus construed, are in violation of the commerce regulation (Article 1, § 8, cl. 3), due process of law and equal protection of the law clauses of the Federal Constitution (Amendment 14); and (5) whether the presiding Judge was in error in charging and refusing to charge certain propositions.

The consideration of the Court will be directed first to those exceptions which present the question first stated in the foregoing enumeration.

A brief statement of some of the principles applicable to such cases, and repeatedly sanctioned by a long line of decisions in support of each, renders wholly unnecessary any extended discussion of the testimony in a disposition of these exceptions contrary to the contention of the appellant.

It has never been held in this State that one about to cross a railroad track at a public highway or street crossing is under an *absolute* duty to stop, look, and listen before going on said track, unless the exercise of ordinary care and prudence, under all the surrounding facts and circumstances, requires the adoption of such a course, and it is ordinarily a question for the jury to determine, in the application of the standard of due care, whether the attempt of a traveler to cross without looking or listening effectively was excusable or culpable. *Zeigler v. Northeastern Railroad Company,* 5 S. C., 221; *Edwards v. Southern Railroad Company,* 63 S. C., 271, 277, 41 S. E., 458; *Bamberg v. Atlantic Coast Line Railroad Company,* 72 S. C., 389, 392, 51 S. E.; 988; *Chisholm v. S. A. L. Railway Company,* 121 S. C., 394, 402, 114 S. E., 500.

It may also be proper to observe at this time and in this connection that the Courts of this State, except, of course, when federal questions are involved, are not controlled by decisions of the Federal Courts, notwithstanding the very high regard which is entertained at all times for such opinions and for the great ability and learning of the eminent jurists who pronounce them (*State v. George,* 119 S. C., 120, 111 S. E., 880; *Johnson v. A. C. L. Railroad Company,* 142 S. C., 125, 140 S. E., 443; *Key v. C. & N. W. Railroad Company,* 150 S. C., 29, 35, 147 S. E., 625), and that the utterance of Mr. Justice Holmes, who delivered the opinion of the Court in the frequently cited case of *Baltimore & Ohio Railroad Company v. Goodman,* 275 U. S., 66, 48 S. Ct., 24, 25, 72 L. Ed., 167, 56 A. L. R., 645, to the effect that it is the duty of the driver of an automobile before crossing a railroad track at a grade crossing, if not otherwise sure whether a train is dangerously near, to "stop and get out of his vehicle," has not been sanctioned and adopted in this State, but on the contrary, for reasons, amongst others, so clearly and forcefully stated by Mr. Justice Bell, in the case of *Georgia Railroad & Banking Com-*

*pany v. Stanley,* 38 Ga. App., 773, 145 S. E., 530, has been expressly declared to be in conflict with our decisions. *Key v. C. & N. W. Railroad Company, supra; Holladay v. A. C. L. Railroad Company,* 150 S. C., 243, 147 S. E., 927.

It is also well established in this jurisdiction that if the facts, which if true would constitute evidence of negligence, are controverted, or if not in dispute there may be a fair and reasonable difference of opinion as to whether the inference of negligence may be drawn therefrom, or if in controversy and the inferences properly deducible therefrom are doubtful, or if they tend to show both parties guilty of negligence or willfulness and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question becomes issuable and must be submitted to the jury under appropriate instructions. *Osteen v. Southern Railway Company,* 76 S. C., 368, 378, 57 S. E., 196; *Miller v. A. C. L. Railroad Company,* 140 S. C., 123, 138 S. E., 675.

It is equally well settled here as elsewhere that in the consideration of a motion for a nonsuit, directed verdict, or new trial by the defendant in his favor, the Circuit Judge is required to view the testimony most favorably to the plaintiff even though all the testimony offered by the latter may be contradicted by that of the defendant. *Brogdon v. Northwestern Railroad Company,* 141 S. C., 238, 139 S. E., 459; *McCutchen v. Pac. Mut. Life Insurance Company,* 153 S. C., 401, 151 S. E., 67.

An application of these just and reasonable rules to the testimony adduced in this case under our many applicable and controlling decisions (*Callison v. C. & W. C. Railroad Company,* 106 S. C., 123, 129, 90 S. E., 260; *Wideman v. Hines,* 117 S. C., 516, 519, 109 S. E., 123; *Peeples v. Seaboard A. L. Railway Company,* 115 S. C., 119, 104 S. E., 541; *Wheelis v. Southern Railway Company,* 118 S. C., 308, 110 S. E., 154; *Bain v. Northwestern*

*Railroad Company,* 120 S. C., 370, 373, 113 S. E., 277; *Chisolm v. S. A. L. Railway Company,* 121 S. C., 394, 404, 114 S. E., 500; *Manning v. A. C. L. Railroad Company,* 129 S. C., 391, 125 S. E., 31; *Sauls v. A. C. L. Railroad Company,* 129 S. C., 427, 125 S. E., 34; *Reynolds Tobacco Company v. A. C. L. Railroad Company,* 131 S. C., 208, 126 S. E., 449; *Miller v. A. C. L. Railroad Company,* 140 S. C., 123, 138 S. E., 675; *McBride v. A. C. L. Railroad Company,* 140 S. C., 260, 138 S. E., 803; *Brogdon v. Railroad Company, supra; Whitehead v. A. C. L. Railroad Company,* 153 S. C., 339, 150 S. E., 769), fully sustains the action of the presiding Judge in submitting the case to the jury.

Even if the rule announced in the case of *Baltimore, etc., Railroad Company v. Goodman,* 275 U. S., 66, 48 S. Ct., 24, 72 L. Ed., 167, 56 A. L. R., 645, were controlling in this case, it is apparent that a similar conclusion would have to be reached under a reasonable and common sense view of its application. In the latter case, the plaintiff was familiar with the crossing and surroundings. It was evidently a bright day and there does not appear in the record of the case the slightest suggestion of anything in the least calculated to distract his attention. In the case under consideration the day was dark, misty, and cloudy. The plaintiff and her husband were wholly unfamiliar with the crossing and surroundings. Owing to construction and repair work on other highways, one of which would have furnished them a more direct route to his destination, they had wandered to an unknown route. These conditions made it necessary for them to take detour routes, the sign of one confronting them, according to the husband's testimony, not more than *thirty feet* from the crossing. The two highways referred to intersected upon the railroad right-of-way, all of which naturally created conditions and a mental attitude of inquiry and confusion quite different from that which appears in the *Goodman case.* In the latter case the record does

not disclose any evidence whatsoever that Goodman looked or listened for an approaching train. In this case it was positive that both travelers looked and listened as well as they could under the circumstances. With an unobstructed view it is difficult to see how an observation made on such a day by the physical act of getting out of the vehicle would have been more effective than one made just *thirty* feet from and at the crossing. It is not believed that the *Goodman case* in its broadest intended scope of operation would hold the plaintiff in this case to such a degree of culpability as to defeat her action upon the theory that she was directly and proximately responsible for her injury.

The second question imputes error in the definition of "gross negligence" given the jury by the presiding Judge who instructed them on this question as follows: "Now 'gross negligence' is the failure to exercise slight care; the failure to exercise slight care. As distinguished from ordinary negligence, simple negligence, it is the intentional, conscious failure to do a thing that is encumbent upon one to do, or the doing of a thing intentionally that one ought not to do."

This instruction, relating to a definition of the words "gross negligence" as used in the statute and characterized by the context, was in complete harmony with the many pertinent decisions in this State (*Boyd v. Blue Ridge Railway Company*, 65 S. C., 326, 43 S. E.; 817; *Glenn v. Southern Railway Company*, 145 S. C., 41, 142 S. E., 801), wherein it has been repeatedly held that such words indicate negligence so gross and reckless as to amount to *willfulness*.

Our next inquiry is whether the sections assailed are in violation of the due process of law clause of the State Constitution (Article 1, § 5), upon the grounds stated.

While an analysis of said sections, based upon the legislative intent as evidenced by the textual language employed and the conclusions announced in our numerous interpretative decisions, is more essential in our final inquiry, it may

for convenience be here stated with a degree, at least, of logical propriety.

Section 4903, Vol. 3, Code of Laws 1922, provides as follows: "A bell of at least thirty pounds weight and a steam or air whistle shall be placed on each locomotive engine or interurban car, and such bell shall be rung or such whistle sounded by the engineer or fireman or motorman at the distance of at least five hundred yards from the place where the railroad crosses any public highway or street or traveled place, and be kept ringing or whistling until the engine or interurban car has crossed such highway or street or traveled place; and if such engine or car shall be at a standstill within less distance than one hundred rods of such crossing such bell shall be rung or such whistle sounded for at least thirty seconds before such engine or interurban cars shall be moved, and shall be kept ringing or sounding until such engine or interurban cars shall have crossed such public highway or street or traveled place: Provided, That a gong of not less than ten inches in diameter may be placed upon interurban cars in lieu of a bell as herein required and shall be sounded as herein provided."

Section 4925 provides: "If a person is injured in his person or property by collision with the engines or any car or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required by this Chapter, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment, as provided in the preceding Section, unless it is shown that in addition to a mere want of ordinary care the person injured, or the person having charge of his person or property, was at the time of the collision guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross wilful negligence or unlawful act contributed to the injury."

Almost every phase of these enactments has been considered and construed by this Court.

From the earliest opportunity presented to the Court to its last utterance upon the subject, it has been uniformly and repeatedly held that a neglect to give the signals prescribed in Section 4903 is negligence *per se*. *Petrie v. Col. & G. R. Railroad Company*, 29 S. C., 303, 7 S. E., 515; *White v. Augusta & K. Railroad Company*, 30 S. C., 218, 9 S. E., 96; *Hankinson v. C., C. & A. Railroad Company*, 41 S. C., 19, 19 S. E., 206; *Strother v. Railroad Company*, 47 S. C., 381, 25 S. E., 272; *Smith v. Railroad Company*, 53 S. C., 121, 30 S. E., 697; *Bowen v. Railroad Company*, 58 S. C., 227, 36 S. E., 590; *Drawdy v. Railroad Company*, 75 S. C., 308, 55 S. E., 444; *Turbyfill v. Atl. & C. A. L. Railway Company*, 83 S. C., 325, 65 S. E., 278; *Callison v. Charleston & W. C. Railway Company, supra*, 106 S. C., 123, 129, 90 S. E., 260; *Keel v. Seaboard Air Line Railroad Company*, 108 S. C., 390, 95 S. E., 64; *Wideman v. Hines, supra; Timmons v. Southern Railroad Company*, 138 S. C., 82, 136 S. E., 27; *Miller v. Railroad Company, supra; Whitehead v. A. C. L. Railroad Company*, 153 S. C., 339, 150 S. E., 769.

This interpretation of the failure to give the signals thus prescribed by the statutory law of the State is in full accord with the general rule of law established in a great majority of the jurisdictions in this country, to the effect that the violation of a penal or criminal statute is actionable negligence or, as frequently stated, is "negligence *per se*," or "negligence as a matter of law," although the defendant may also be subjected to a penalty or fine prescribed in the enactment. The principle upon which rule is based, stated generally, is that where a statute or municipal ordinance imposes a specific duty for the protection or benefit of others, if one fails or neglects to perform that duty one is liable to those for whose protection or benefit it was designed for any injuries of the character which the statute or ordinance was

intended to prevent and which were proximately produced by such failure. 20 R. C. L., 38, 39.

This Court has never held that a mere failure to give the prescribed statutory signals *was* recklessness, wantonness, or willfulness *per se,* so as to warrant an award of punitive damages, but that the reasonable inference from such failure was sufficient to carry that issue to the jury for its determination. *Mack v. South Bound Railroad Company,* 52 S. C., 323, 29 S. E., 905, 40 L. R. A., 679, 68 Am. St. Rep., 913; *Osteen v. Railway Company, supra; Goodwin v. Railroad Company,* 82 S. C., 321, 327 S. E., 242; *Woodward v. Southern Railway Company,* 90 S. C., 262, 266, 73 S. E., 79; *Easterling v. A. C. L. Railroad Company,* 91 S. C., 548, 75 S. E., 133; *Sanders v. Charleston & W. C. Railway Company,* 93 S. C., 543, 77 S. E., 289; *Kirkland v. Augusta-Aiken Railway & Electric Company,* 97 S. C., 61, 72, 81 S. E., 306; *Folk v. Seaboard Air Line Railway Company,* 99 S. C., 284, 83 S. E., 452; *Ritter v. A. C. L. Railway Company,* 101 S. C., 8, 85 S. E., 51; *Keel v. Seaboard A. L. Railroad Company,* 108 S. C., 390, 95 S. E., 64; *Wideman v. Hines,* 117 S. C., 516, 109 S. E., 123; *Miller v. A. C. L. Railroad Company,* 140 S. C., 123, 138 S. E., 675; *Key v. Charleston & W. C. Railroad Company,* 144 S. C., 164, 142 S. E., 336.

In the earlier cases of *Wragge v. S. C. & G. Railroad Company,* 47 S. C., 105, 25 S. E., 76, 83, 33 L. R. A., 191, 58 Am. St. Rep., 870, and *Strother v. S. C. & G. Railroad Company,* 47 S. C., 375, 25 S. E., 272, it was held that in an action to recover damages for an injury sustained by one at the places contemplated in the statute, it was not necessary to show that negligence resulting from a failure to give the prescribed signals was the proximate or efficient cause of the injury, but that it was sufficient to show that such failure "contributed" to the injury in the sense of having "some share or agency in producing such result."

This construction of the word "contributed" as used in the statute has, however, been repudiated in subsequent cases, the Court clearly holding that, "when the law speaks of an act of negligence as contributory to an injury, it means as a direct and proximate cause thereof." *Bowen v. Southern Railroad Company*, 58 S. C., 222, 36 S. E., 590, 592; *Burns v. Southern Railway Company*, 65 S. C., 229, 43 S. E., 679; *Turbyfill v. Railway Company*, 83 S. C., 325, 65 S. E., 278; *Cable Piano Company v. Southern Railway Company*, 94 S. C., 143, 77 S. E., 868; *McBride v. A. C. L. Railroad Company*, 140 S. C., 260, 138 S. E., 803.

However this may be as matter of judicial history, the chief concern is as to the final constructive and prevailing view of the Court on the meaning of the word "contributed" as used in the statute. Under the later decisions on the question the rule is unquestionably established that where one is injured in actual collision with a locomotive engine or cars on a public highway or street crossing or traveled place over a railroad track and there was a neglect to give the statutory signals, it must appear that the failure to give the signals contributed as a proximate cause of the injury, but from such failure to give the signals a disputable presumption arises in the first instance that such failure was the proximate cause thereof. *McBride v. A. C. L. Railroad Company*, 140 S. C., 260, 138 S. E., 803, 807; *Brogdon v. Northwestern Railroad Company*, 141 S. C., 238, 139 S. E., 459; *Glenn v. Southern Railroad Company*, 145 S. C., 41, 142 S. E., 801; *Bowers v. Carolina Public Service Corporation*, 148 S. C., 161, 145 S. E., 790; *Edwards v. A. C. L. Railroad Company*, 148 S. C., 266, 146 S. E., 97; *Whitehead v. A. C. L. Railroad Company*, 153 S. C., 339, 150 S. E., 769; *Stabler v. Railroad Company*, 160 S. C., 191, 158 S. E., 267.

In the case of *Strother v. Railroad Company, supra,* the Court further held that where there has been a failure to comply with the statutory requirements as to the prescribed

signals and a person is injured while crossing a highway, street, or traveled place, it will be presumed that such negligence caused the injury unless the testimony shows that it was caused in some other way. Of course, the causal connection here contemplated between the act of neglect and the injury was not that of a *direct* and *proximate* character, but only that the former had "some share or agency" in producing the latter, as the presumption could only relate to and furnish *prima facie* evidence of the causal connection held essential to the action.

In view of an apparent lack of harmony, certainly a measure of confusion, arising from seemingly conflicting utterances in some of the prior decisions, Mr. Justice Stabler availed himself of an opportunity presented in the case of *McBride v. Railroad Company, supra,* to discuss these questions at some length and in a very lucid, able, and elaborate opinion, in which a number of the cases were carefully and chronologically reviewed, states the conclusion of the Court on the nature of the causal connection contemplated in the statute as follows: "Under the statute it must appear that the failure to give the signals contributed to the injury, and the decisions of this Court hold that this means contributing as a proximate cause."

It is, therefore, quite evident that appellants' contention under the supposed authority of the cases of *Cirsosky v. Smathers,* 128 S. C., 358, 122 S. E., 864; *McCown v. Muldrow,* 91 S. C., 523, 74 S. E., 386, Ann. Cas. 1914-A, 139, and *Whaley v. Ostendorff,* 90 S. C., 281, 73 S. E., 186, all of which were decided before the *McBride case* to the effect that in this State in all cases *ex delicto* there must be proof of proximate cause *except* in collision cases at a *crossing* where a *railroad* is defendant, is in direct variance with the conclusion reached in the *McBride case.*

With regard to the basis and nature of the presumption arising upon a failure to give such prescribed signals, the conclusion of the Court is thus stated: "From our considera-

tion of this question, we are satisfied that the proper construction of the statute leads to the conclusion that when a person is injured by a collision with the engines or any car or cars of a railroad corporation at a crossing, and the railroad failed to give the statutory signals at such time and place, the presumption arises that the failure to give the signals is the proximate cause of the injury, since such injury is the natural and probable consequence of the failure to give the signals and is the very injury intended to be prevented by the statute."

An affirmative avoidance of liability under the statute is concisely but comprehensively stated by Mr. Chief Justice Blease in the case of *Glenn v. Southern Railway Company*, 145 S. C., 41, 48, 49, 142 S. E., 801, 803, in this language: "Under the specific terms of the signal statute, the common-law defense of contributory negligence is eliminated from our consideration. The language of the statute (Section 4925, Civ. Code 1922) is that, if the failure to give the specified signals contributed to the injury liability for all damages caused by the collision is imposed upon the railroad company, unless, 'in addition to a mere want of ordinary care,' it is shown that *gross* or *willful negligence* or unlawful act, chargeable to the person injured, contributed to the injury. Negligence signifies inattention, or, in other words, an unconscious failure to realize the danger of the situation. Willfulness signifies conscious disregard of consequences. The term 'gross negligence' does not stand by itself in the statute, but the context characterizes the meaning and gives it the significance of willfulness. This was the construction given in *Boyd v. (Blue Ridge) Railway*, 65, S. C., 326, 43 S. E., 817, to the use of the same term in the charge of the trial Judge, where, from its connection with the other language used in the charge, Mr. Justice Woods said that the meaning must be understood 'that it was not simply gross negligence, but negligence gross and reckless of consequences

\* \* \* to such degree as to assume the nature of willfulness.' "

It is therefore obvious that under the decisions of this Court, only some of which have been referred to, interpreting these sections, a brief recapitulation discloses the following conclusions: (1) That a neglect to give the prescribed statutory signals is negligence *per se;* (2) that such failure, under the contemplated conditions, is not recklessness, willfulness, or wantonness *per se,* but only affords the basis of an inference sufficient to carry the case, under proper instructions, to the jury for its determination of the question; (3) that upon such failure and resulting injury at the places stated therein, there is a rebuttable presumption, which will be discussed hereafter more fully, that such failure produced the injury as a proximate cause and (4) that in order to avoid liability, affirmatively, it is incumbent upon the offending corporation to show that at the time of the injury the person injured, or the person having charge of his person or property, in addition to a mere want of ordinary care, was "guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury."

The exception raising the question of the constitutionality of the statute under the State Constitution, however, imputes error to the presiding Judge in the single instance of refusing to charge the defendants' second request to charge, in which it is contended that the crossing statute, as construed by this Court, is also *penal* in character and violations thereof made punishable in the criminal Courts by a *fine;* that the denial of the *usual* defense of contributory negligence and the application of "unusual and extreme presumptions of law and fact against the defendant railroad company," impose upon the plaintiff the burden of proving such violation *beyond a reasonable doubt* before he would be entitled to a recovery; and that in the absence

of such proof a recovery would deny to the defendant company due process of law under the Federal and State Constitutions.

In the cases of *Burckhalter v. Coward,* 16 S. C., 435, and *Gill v. Ruggles,* 95 S. C., 90, 78 S. E., 536, the Court held that a plea of justification set up as a defense in an action for slander charging a *criminal* offense must be supported by evidence sufficient to convince the jury beyond a *reasonable doubt* of the commission of the alleged offense. A similar conclusion was reached with regard to a plea of justification in the making and publication of an alleged libelous communication in the case of *Duncan v. Record Publishing Company,* 145 S. C., 196, 143 S. E., 31.

In the case of *Murray v. Aiken Mining & P. Mfg. Co.,* 37 S. C., 468, 16 S. E., 143, it was held that in order to establish the liability of a surety on his bond for a breach of trust with a fraudulent intent on the part of the principal, the guilt of the latter would have to be shown by the same degree of proof that would be required to establish his guilt under a criminal indictment.

This case was overruled by implication in the case of *Salley v. Globe Indemnity Company,* 133 S. C., 342, 131 S. E., 616, 43 A. L. R., 971, and expressly so in the case of *Peurifoy v. Loyal,* 154 S. C., 267, 298, 151 S. E., 579.

In the case of *Kirven v. Kirven,* 162 S. C., 162, 160 S. E., 432, 434, the action was based upon an alleged willful, wanton, and malicious assault upon the defendant, a woman, the taking without her consent of indecent liberties with her person, and making of indecent proposals to her acts when accompanied by the necessary intent, constitute some of the gravest offenses known to our criminal law.

It was held definitely and clearly in the latter case that the only "possible exception to the general civil rule that a plaintiff is required to prove the allegations of the complaint *by the preponderance of the evidence,* or the defendant his defense by a *like degree of proof"* is in support of a plea of

justification where the action is one based on slander or libel in which a crime is therein charged against the plaintiff. Indeed, this is no exception to the general rule as applicable to the burden assumed by the *plaintiff*, as the exception to the general rule can only relate to the burden of the *defendant*.

It is, therefore, quite evident that the statute is free from any objection urged as violation of the State Constitution.

The next inquiry in our general summary of the questions presented is whether the statute violates the due process of law, equal protection of the law and the commerce clauses of the Federal Constitution with a number of ramifications embracing questions bearing directly on and essential to a proper decision of the main questions, all of which will be considered in the order named.

The presiding Judge, an attorney of long experience and rare legal learning and one of the State's ablest Judges, since elevated to the membership of this Court, after careful consideration in his refusal of the motion for a directed verdict, denial of certain requests to charge, and overruling the motion for a new trial, sustained, in complete harmony with our many federal and State decisions, the constitutionality of the statute as not only a valid but a wise exercise of the police power vested in the State and upon an application of the analogies afforded by the case of *Mobile, etc., Railroad Company v. Turnipseed*, 219 U. S., 35, 31 S. Ct., 136, 55 L. Ed., 78, 32 L. R. A. (N. S.), 226, Ann. Cas. 1912-A, 463, as distinguished from the principles declared in the case of *Western, etc., Railroad Company v. Henderson*, 279 U. S., 639, 49 S. Ct., 445, 73 L. Ed., 884.

The attack upon the validity of the statute as obnoxious to the Federal Constitution, as construed and interpreted by this Court in these particulars and judicially viewed as of textual significance (*Missouri, etc., Railroad Company v. Nebraska*, 164 U. S., 403, 17 S. Ct., 130, 41 L. Ed., 489; *Cargill Company v. Minnesota*, 180 U. S., 452, 21 S. Ct.,

423, 45 L. Ed., 619; *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S., 61, 31 S. Ct., 337, 55 L. Ed., 369, Ann. Cas., 1912-C, 160; *Purity, etc., Company v. Lynch,* 226 U. S., 192, 33 S. Ct., 44, 57 L. Ed., 184; *Price v. Illinois,* 238 U. S., 446, 35 S. Ct., 892, 59 L. Ed., 1400; *St. Louis, etc., Company v. Kansas City,* 241 U. S., 419, 36 S. Ct., 647, 60 L. Ed., 1072; *Standard Oil Company v. Graves,* 249 U. S., 389, 39 S. Ct., 320, 63 L. Ed., 662; *Thornton v. Duffy,* 254 U. S., 361, 41 S. Ct., 137, 65 L. Ed., 304; *Ward v. Krinsky,* 259 U. S., 503, 42 S. Ct., 529, 66 L. Ed., 1033, 28 A. L. R., 1207; *Chicago, etc., Railroad Company v. Risty,* 276 U. S., 576, 48 S. Ct., 396, 72 L. Ed., 703), is based upon the contentions:

1. That the statute does not provide due process of law, in that: (a) The sections under consideration, as interpreted by this Court, raise arbitrary and unreasonable presumptions which allow a recovery by the plaintiff without the proof of proximate cause; and (b) by reason of the provisions of these sections the standard of conduct to be observed by a traveler and a railroad company in the use of a grade crossing laid down by the Supreme Court of the United States in the case of *Baltimore & Ohio Railroad Company v. Goodman,* 275 U. S., 66, 48 S. Ct., 24, 72 L. Ed., 167, 56 A. L. R., 645, is rendered inapplicable in this State.

2. That the statute embodying these sections denies to railroad companies the equal protection of the laws, in that: (a) Proof of proximate cause is required in all tort cases except when such a company is the defendant in a crossing collision case; (b) that the railroad company is made liable for simple negligence resulting in injury at such crossings while the action of the traveler is not defeated unless he is guilty of willfulness or is acting in violation of the law; (c) that the statute is not applicable to the engineer through whom the company acts; and (d) the statute is not applicable to all common carriers involved in the identical transaction.

3. That these sections, as construed by this Court, ██ ██ are also violative of the interstate commerce clause of the Federal Constitution and void.

While the police power of the states left to them and not directly restrained by the Federal Constitution (Slaughter Houses Cases, 83 U. S. (16 Wall), 36, 21 L. Ed., 394; *Butcher's Union Slaughter-House, etc., Company v. Crescent City Live-Stock Landing, etc., Company,* 111 U. S., 746, 4 S. Ct., 652, 28 L. Ed., 585; *Barbier v. Connolly,* 113 U. S., 27, 5 S. Ct., 357, 28 L. Ed., 923; *Missouri, etc., Railroad Company v. Humes,* 115 U. S., 512, 6 S. Ct., 110, 29 L. Ed., 463; *Yick Wo v. Hopkins,* 118 U. S., 356, 6 S. Ct., 1064, 30 L. Ed., 220; *Missouri, etc., Railroad Company v. Mackey,* 127 U. S., 205, 208, 8 S. Ct., 1161, 32 L. Ed., 107; *Jacobson v. Massachusetts,* 197 U. S., 11, 25 S. Ct., 358, 49 S. Ct., 643, 3 Ann. Cas., 765; *House v. Mayes,* 219 U. S., 270, 31 S. Ct., 234, 55 L. Ed., 213), is incapable of exact definition (*Boston Beer Company v. Massachusetts,* 97 U. S., 25, 24 L. Ed., 989; *New Orleans Gas-Light Company v. Louisiana Light & Heat Producing & Manufacturing Company,* 115 U. S., 650, 6 S. Ct., 252, 29 L. Ed., 516); and cannot be aliened or abridged by them by contract or otherwise (*Stone v. Mississippi,* 101 U. S., 814, 25 L. Ed., 1079; *St. Louis, etc., Railroad Company v. Mathews.* 165 U. S., 1, 17 S. Ct., 243, 41 L. Ed., 611; *New Orleans Gas Light Company v. Drainage Company,* 197 U. S., 453, 25 S. Ct., 471, 49 L. Ed., 831), yet it has been often held that the Fourteenth Amendment to the Federal Constitution does not operate as a limitation upon the states in the authorized exercise of this power to enact and enforce such laws as in their judgment will protect the health, morals, safety, and general welfare of the public (*Mugler v. Kansas,* 123 U. S., 623, 8 S. Ct., 273, 31 L. Ed., 205; *Minneapolis, etc., Railroad Company v. Beckwith,* 129 U. S., 26, 9 S. Ct., 207, 32 L. Ed., 585; *Fischer v. St. Louis,* 194 U. S., 361, 24 S. Ct., 673, 48 L. Ed., 1018; *Murphy v. People of California,* 225 U. S.,

623, 32 S. Ct., 697, 56 L. Ed., 1229, 41 L. R. A. (N. S.), 153; *C., C. & A. Railroad Company v. Gibbes*, 27 S. C., 385, 4 S. E., 49; *Brown v. Tharpe*, 74 S. C., 207, 54 S. E., 363; *Simmons v. W. U. Telegraph Company*, 63 S. C., 425, 41 S. E., 521, 57 L. R. A., 607), where such laws or regulations are not palpably arbitrary, unjust, or unreasonable and do not unjustly or unreasonably impair private constitutional rights. *Dutton v. Strong*, 1 Black, 1, 23, 17 L. Ed., 29; *Crowley v. Christensen*, 137 U. S., 86, 11 S. Ct., 13, 34 L. Ed., 620; *Lawton v. Steele*, 152 U. S., 133, 14 S. Ct., 499, 38 L. Ed., 385; *Gulf, C. & S. F. Railway Company v. Ellis*, 165 U. S., 150, 17 S. Ct., 255, 41 L. Ed., 666; *Connolly v. Union Sewer Pipe Company*, 184 S. C., 540, 22 S. Ct., 431, 46 L. Ed., 679; *Dobbins v. Los Angeles*, 195 U. S., 223, 25 S. Ct., 18, 49 L. Ed., 169.

It has been so often determined, and the wholesome doctrine so long and generally recognized in both federal and State jurisdictions, that all privileges and rights acquired by railroad companies are held subject to a valid exercise of the police power of the State, always subject to judicial scrutiny, and that its legitimate exercise by the State is not in contravention of the due process of law clause of the Fourteenth Amendment, that the question cannot be regarded as now open to any serious consideration. *McCandless v. Richmond & D. Railway*, 38 S. C., 103, 16 S. E., 429, 18 L. R. A., 440; *Smith v. Alabama*, 124 U. S., 465, 8 S. Ct., 564, 31 L. Ed., 508.

Under this uniformly recognized and sovereign power of the states in our American constitutional system of government, various statutory enactments, regulations, and municipal ordinances, pursuant to authorized delegation of authority, touching many phases of track construction, protection and maintenance, general equipment, the operation of trains, adequate methods of examination, inspection and supervision intended to promote the safety, protection and

convenience of employee, passenger, and the public, have been judicially upheld as free from the objections here urged.

As indicating the scope and limitation of the power and its valid exercise and application, regulations have been generally sustained in many state and federal jurisdictions that require railroad companies to change or alter the location of its track and to elevate or depress it, at its own expense, as a means of rendering travel on a highway safe (*Denver, etc., Railroad Company v. City and County of Denver*, 250 U. S., 241, 39 S. Ct., 450, 63 L. Ed., 958; *New York, etc., Railroad Company v. Bristol*, 151 U. S., 556, 14 S. Ct., 437, 38 L. Ed., 269); that prohibit the laying of more than a single track in a narrow, much-used street, although authorized by its franchise to lay a double track thereon (*Denver, etc., Railroad Company v. City and County of Denver, supra; Baltimore v. Baltimore Trust Company*, 166 U. S., 675, 17 S. Ct., 696, 41 L. Ed., 1160); that require the proper protection of the tack by fencing (*New. York, etc., Railroad Company v. Bristol, supra*); that require the abrogation, at the expense of the company, of grade crossings by the elevation of their tracks at such places and the construction and maintenance of bridges and viaducts at public crossings (*Denver, etc., Railroad Company v. City and County of Denver, supra; Northern Pacific Railroad Company v. Minnesota ex rel. Duluth*, 208 U. S., 583, 28 S. Ct., 341, 52 L. Ed., 630; *Chicago, etc., Railway Company v. Minneapolis*, 232 U. S., 430, 34 S. Ct., 400, 58·L. Ed., 671; *Missouri, etc., Railway Company v. Omaha*, 235 U. S., 121, 35 S. Ct., 82, 59 L. Ed., 157); that require the construction of a sidewalk over its track (*Great Northern Railway v. Minnesota ex rel. Village of Clara City*, 246 U. S., 434, 38 S. Ct., 346, 62 L. Ed., 817); that require the installation of safety devices (*New York, etc., Railroad Company v. Bristol, supra*); that regulate the speed at designated places in the operation of trains (*Crutcher v. Kentucky*, 141 U. S., 47, 11 S. Ct., 851, 35 L. Ed., 649; *Erb*

*v. Morasch,* 177 U. S., 584, 20 S. Ct., 819, 44 L. Ed., 897: *Southern Railway Company v. King,* 217 U. S., 524, 30 S. Ct., 594, 54 L. Ed., 868) ; that require the stopping of trains at certain designated stations (*Lake Shore, etc., Railroad Company v. Ohio,* 173 U. S., 286, 19 S. Ct., 465, 43 L. Ed., 702) ; that require the proper heating of passenger cars (*New York, etc., Railroad Company v. New York,* 165 U. S., 628, 17 S. Ct., 418, 41 L. Ed., 853) ; that provide for the examination and licensing of locomotive engineers (*Smith v. Alabama,* 124 U. S., 465, 8 S. Ct., 564, 31 L. Ed., 508) ; that authorize a reasonable attorney's fee as a part of the judgment in suits for damages for injuries due to communicated fires as a means of enforcing greater care in the operation of trains (*Atchison, etc., Railroad Company v. Matthews,* 174 U. S., 96, 19 S. Ct., 609, 43 L. Ed., 909; that abrogate the fellow-servant doctrine (*Mobile, etc., Railroad Company v. Turnipseed,* 219 U. S., 35, 31 S. Ct., 136, 55 L. Ed., 78, 32 L. R. A. (N. S.), 226, Ann. Cas. 1912-A, 463) ; that regulate the construction and use of a crossing (*M., K. & T. Railway Company v. Oklahoma,* 271 U. S., 303, 46 S. Ct., 517, 70 L. Ed., 957) ; that regulate the manner of approach by trains to such crossings (*Southern Railway Company v. King,* 217 U. S., 524, 30 S. Ct., 594, 54 L. Ed., 868) ; and many other regulatory measures relating to specific subjects embraced in the general purpose of such legislation in connection with the railroad corporation and others engaged in various industrial and economic enterprises.

In the well-considered case of *Richmond, etc., Railroad Company v. City of Richmond,* 145 Va., 225, 133 S. E., 800, 807, which was an action against the city to recover one-half of the cost of bridge building and construction work due in connection with the street crossings of its James River Division Line, the Court said, quoting from the case of *Erie Railroad Company v. Board of Public Utility Commissioners,* 254 U. S., 394, 41 S. Ct., 169, 65 L. Ed., 322:

"Grade crossings call for a necessary adjustment of two conflicting interests—that of the public using the streets and that of the railroads and the public using them. Generally, the streets represent the more important interest of the two. There can be no doubt that they did when these railroads were laid out, or that the advent of automobiles has given them an additional claim to consideration. They always are the necessity of the whole public, which the railroads, vital as they are, hardly can be called to the same extent. Being places to which the public is invited and that it necessarily frequents, the state, in the care of which this interest is and from which, ultimately, the railroads derive their right to occupy the land, has a constitutional right to insist that they shall not be made *dangerous to the public,* whatever may be the cost to the parties introducing the danger. That is one of the most obvious cases of the police power, or, to put the same proposition in another form, the authority of the railroads to project their moving masses across thoroughfares must be taken to be subject to the implied limitation that it may be cut down whenever and so far as the safety of the public requires.   *   *   *"

In the cases of *State v. Aiken,* 42 S. C., 222, 20 S. Ct., 221, 26 L. R. A., 345; *Stehmeyer v. City Council of Charleston,* 53 S. C., 259, 31 S. C., 322; *Mauldin v. City Council of Greenville,* 53 S. C., 285, 31 S. E., 252, 43 L. R. A., 101, 69 Am. St. Rep., 855; *State v. Virginia-Carolina Chemical Company,* 71 S. C., 544, 51 S. E., 455; *Aetna Fire Insurance Company v. Jones,* 78 S. C., 445, 59 S. E., 148, 13 L. R. A. (N. S.), 1147, 125 Am. St. Rep., 818, and *A. C. L. Railroad Company v. Railroad Commission,* 89 S. C., 472, 72 S. E., 18, 20, this power has been discussed in some instances at great length, and numerous decisions reviewed from other state and federal jurisdictions and uniform sanction given to the principles stated and so generally recognized.

In the last case referred to the question presented was whether, under the Constitution and laws of the State, the Railroad Commission had the right to refuse to permit one railroad to cross the tracks of another *at grade*. It was held that the legislature, under a valid exercise of the police power, might prohibit such crossing; the conclusion of the Court being declared in the following language: "Notwithstanding that section of the Constitution (Section 6, of Article 9, which gives to any railroad organized under the laws of this State the right to intersect with or cross any other railroad), it would be perfectly competent for the legislature, in the exercise of the police power of the State, to prohibit grade crossings altogether, and require all existing grade crossing to be changed, and put above or below grade. *New York, etc., Railroad Company v. Bristol,* 151 U. S., 556, 14 S. Ct., 437, 38 L. Ed., 269; *Chicago, etc., Railroad Company v. Nebraska,* 170 U. S., 57, 18 S. Ct., 513, 42 L. Ed., 948; *Chicago, etc., Railroad Company v. Illinois,* 200 U. S., 561, 26 S. Ct., 341, 50 L. Ed., 596."

In the light and application of this universally accepted doctrine, it is too obvious to warrant anything more than the mere statement of the proposition that Section 4903 is clearly embraced within a valid exercise of the police power of the State.

This section simply provides for the equipment of the locomotive engines and interurban cars with a bell and steam or air whistle, or gong in the case of an interurban car; that in the case of a moving train or car approaching a public crossing, street, or traveled place the same shall be kept ringing or blowing for a prescribed distance before passing over the same, and in the event the car or train is standing a certain distance from the crossing or on the same, such signals must be given a certain length of time before moving.

Indeed, Mr. Justice Cothran, in the minority opinion, upon the authority of the cases of *Atlantic Coast Line Railroad Company v. Georgia,* 234 U. S., 280, 34 S. Ct., 829, 58 L.

Ed., 1312; *Smith v. Alabama*, 124 U. S., 465, 8 S. Ct., 564, 31 L. Ed., 508; *Truax v. Corrigan*, 257 U. S., 312, 42 S. Ct., 124, 66 L. Ed., 254, 27 A. L. R., 375, and *Nashville, etc., Railroad Company v. White*, 278 U. S., 456, 49 S. Ct., 189, 73 L. Ed., 452, concedes the proposition in this language: "From this it is fair to conclude that Section 4903, which prescribes the signals to be given by a railroad corporation as its train approaches a highway crossing, is a police regulation, within the legislative power of a state, notwithstanding its direct effect upon trains employed in interstate commerce." Again: "It can hardly be questioned that Section 4903 is a valid exercise of the police power of the State and its constitutionality sustained."

But it is insisted that while the "vice is not in that section, but in Section 4925," the *effect* given it by the provisions of Section 4925 and the decisions of this Court construing and applying it, taken in connection with Section 4903, render both obnoxious to the clauses of the Federal Constitution invoked by the appellant.

As the contention of appellant on this phase of the constitutional attack upon the statute is in the main based upon the cases of *Western Atlantic Railroad Company v. Henderson*, 279 U. S., 639, 49 S. Ct., 445, 447, 73 L. Ed., 884, and *Baltimore & Ohio Railroad Company v. Goodman*, 275 U. S., 66, 48 S. Ct., 24, 72 L. Ed., 167, 56 A. L. R., 645, and an effort to distinguish the case of *Mobile, etc., Railroad Company v. Turnipseed*, 219 U. S., 35, 31 S. Ct., 136, 55 L. Ed., 78, 32 L. R. A. (N. S.), 226, Ann. Cas., 1912-A, 463, in which it was held that the Mississippi statute was free from the constitutional objections here urged, a more or less extended consideration will be given particularly to the former, upon which the most reliance is placed.

The plaintiff in that case brought an action to recover damages for the death of her husband, who was killed near Tunnel Hill, in the State of Georgia, at a grade crossing of the public highway and the defendant's railroad, in collision

between a motortruck and one of defendant's trains. The jury returned a verdict in her favor and the judgment entered thereon was affirmed in the Court of Appeals and in the Supreme Court of that state.

Section 2780 of the Georgia Civil Code provides as follows: "A railroad company shall be liable for any damage done to persons, stock, or other property by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company."

The plaintiff charged that the collision and death of her husband were caused by the negligence of the defendant and its employees in eight specifications of errors, all of which were denied by the defendant, who further alleged that the deceased came to his death as a result of his own fault. The plaintiff proved the death of her husband in the collision and offered some evidence tending to show a dangerous condition of the crossing and a negligence maintenance thereof. *She offered no evidence whatever,* as appears in the record to support her other *five allegations of negligence.* The defendant offered much evidence to negative the specific acts of negligence charged against it and its employees in the complaint.

The instructions given the jury by the Court included the following: "When it has been made to appear that injury or damage has occurred by reason of the operation of the locomotive and train of cars of a railroad company, the presumption arises that the railroad company and its employees were negligent *in each of the particular specified in the plaintiff's petition,* and the *burden* thereupon *shifts* to the *railroad company* to show that its employees exercised ordinary care and diligence *in the particulars wherein they are alleged to have been negligent,* and, unless it does so,

the fact of the *injury* or *damage* having been made to *appear,* the plaintiff, suing for recovery of damages by reason of such injury, *would be entitled to recover.* * * * The burden is upon the plaintiff in this case to establish her contentions by a preponderance of the evidence. That is *subject to the qualification, already given you,* that, when the fact of the killing has been made to appear, the presumption arises that the defendant company was negligent in *each* of the *particulars specified* in the *petition,* and the burden thereupon *shifts* to the *defendant company* to show that its employees exercised ordinary care and diligence *in such particulars."* (Italics added.)

This instruction was affirmed, as already stated, by the Supreme Court of Georgia.

In commenting upon the same the Federal Supreme Court uses this language: "Upon the *mere fact of collision* and resulting death, the statute is held to raise a presumption that defendant and its employees were *negligent in each* of the *particulars alleged,* and that *every act or omission in plaintiff's specifications of negligence was the proximate cause of the death,* and it makes defendant liable unless it showed *due care in respect of every matter alleged against it.* And, by authorizing the jury, *in the absence* of evidence, to *find negligence* in the operation of the engine and train, the Court necessarily permitted the presumption to be considered and weighed as evidence against the testimony of defendant's witnesses tending affirmatively to prove such operation was not negligent in any respect." (Italics added.)

The contention of the plaintiff with regard to the interpretation of this statute is thus stated by the Court: "Appellee insists that Section 2780 is valid, and argues that the presumption, being one established by statute, has the effect of evidence, and that it is for the jury to decide whether the company's evidence is sufficient to overcome the presumption; that 'it should not as a matter of law be dissipated the instant any testimony is taken against it,' and that the is-

sue is to be determined on a consideration of all the evidence *including the presumption."*

Disposing of this contention the Court said:

"Legislation declaring that proof of one fact or group of facts shall constitute *prima facie* evidence of an ultimate fact in issue is valid if there is a rational connection between what is proved and what is to be inferred. A *prima facie* presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is arbitrary, or that operates to deny a fair oportunity to repel it, violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property. *Manley v. Georgia,* 279 U. S., 1, 49 S. Ct., 215, 73 L. Ed., 575, and cases cited.

"The mere fact of collision between a railway train and a vehicle at a highway grade crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company, or of the traveler on the highway, or of both, or without fault of any one. Reasoning does not lead from the occurrence back to its cause. And the presumption was used to support *conflicting allegations of negligence.* Plaintiff claimed that the engineer failed to keep a lookout ahead, that he did not stop the train after he saw the truck on the crossing, and that his eyesight was so bad that he could not see the truck in time to stop the train." (Italics added.)

It is evident upon the most cursory view that the construction given the Georgia statute in the *Henderson case* by the highest tribunal in that state presents differences so vital as to destroy the analogies invoked as we will show.

In the first place, under the Georgia statute the presumption assailed arises 'from the mere fact of the happening of the accident, *the injury,* while in our statute it only arises from the *failure* to give the *statutory signals,* declared to be

negligence as a matter of *law,* admittedly a valid requirement in the exercise of the police power of the State and designed to *prevent the injury.*

The jury were instructed in the *Henderson case,* in conformity with the construction given the statute by the Supreme Court of Georgia, that the moment the plaintiff made it appear or *showed injury or damage* by reason of the *operation* of the *locomotive* and *train of cars* of a railroad company, the presumption arises that the railroad company and its employees were negligent in *each of the particulars specified* in his complaint, and the *burden thereupon shifts* to the railroad company *to show* that its employees exercised ordinary care and diligence *in the particulars wherein they are alleged to have been negligent,* and unless it does so, the *fact* of the *injury* or *damage* having been made to appear the plaintiff would be entitled to recover.

This instruction also suggests another very essential difference between the two enactments, for no such doctrine as this has ever been declared or even remotely suggested in any of the decisions of this State interpreting or applying any provision of our statute, allowing a recovery against a railroad company in a complaint charging at least *eight* specified acts of negligence against its employees with absolutely no pretense of evidence offered except in support of *three* of these alleged acts, upon the principle that the mere proof of *injury or damage* raised a presumption of negligence on the part of the company and its operating employees with regard to *each* of the *specified acts* of *negligence* and imposed a *shifting burden* of exculpation. Such a view would have enabled the plaintiff to recover in that case on any one of the five specifications of negligence, unsupported by a scintilla of evidence, unless the defendant had shown affirmatively that it and its employees had exercised ordinary care and diligence in *each* of the *particulars* charged against them.

Under the established practice in this State the plaintiff may charge against the defendant in an action *ex delicto* as many acts of negligence or other wrongs as may properly arise out of the transaction under judicial investigation, as causing or contributing to the injury complained of without being required to make a separate statement thereof or to elect upon which act he will go to trial (Section 427, Code of Civil Procedure, 1922; *Glover v. Charleston & S. Railway Company,* 57 S. C., 228, 35 S. E., 510; *Machen v. Western Union Telegraph Company,* 63 S. C., 363, 41 S. E., 448; *Sloan v. Seaboard & Railway Company,* 64 S. C., 389, 42 S. E., 197; *Stewbridge v. Southern Railway Company,* 65 S. C., 440, 43 S. E., 968; *Schumpert v. Southern Railway Company,* 65 S. C., 335, 43 S. E., 813, 95 Am. St. Rep., 802; *Du Pre v. Southern Railway Company,* 66 S. C., 124, 44 S. E., 580; *Bonner v. W. U. Telegraph Company,* 71 S. C., 303, 51 S. E., 117; *Machen v. W. U. Telegraph Company,* 72 S. C., 261, 51 S. E., 697; *Rountree v. Railroad Company,* 73 S. C., 272, 53 S. E., 424; *Barfield v. J. L. Coker & Co.,* 73 S. C., 188, 53 S. E., 170; *Taber v. Railway Company,* 81 S. C., 317, 62 S. E., 311; *Wichman v. Scarpa,* 101 S. C., 437, 85 S. E., 1061; *Miller v. Railroad Company,* 140 S. C., 123, 138 S. E., 675), and may allege acts of negligence at common law as well as those arising under the statute (*Cooper v. C. & W. C. Railway Company,* 65 S. C., 214, 43 S. E., 682), in which event, as in other cases, where more than one act of negligence or other wrong is charged, if supported by testimony, the plaintiff is entitled to have his whole case submitted to the jury under proper instructions (Section 427, Code of Civil Procedure 1922), and recover such damages as he has sustained and arising from one or another or all of such acts or wrongs alleged in the complaint (Section 427, Code of Civil Procedure 1922).

But in no case does this presumption arising from a failure to give the signals inure to his benefit "in *each* of the

particulars alleged" in the complaint, or be invoked "to *support conflicting allegations of negligence,*" or afford *prima facie* evidence that "every act or omission in plaintiff's specifications of negligence was the *proximate* cause" of the *injury or death,* but only relates to the specific charge of *failure* to *give the signals.* If there was a neglect to give the signals, no presumption arises as to any other specification of negligence, even though charged against the employees of the company in *other particulars* in the *operation* of the train, as was done in the present case.

These statutes, as thus construed by the highest tribunals of their respective states, clearly indicate the difference where the presumption is based upon *a single fact,* charged as an act of negligence likely to result in the injury, as in our statute, and where the presumption arises from the mere fact of *injury* or *death* and applies to *all* acts *alleged.*

In determining the character and effect of the presumption under our statute, as distinguished from that held to arise and operate under the Georgia statute, it must be observed at the outset that in order to maintain an action thereunder it is incumbent on the plaintiff to establish by the preponderance of the evidence: (1) That the defendant railroad company operated a steam or electric railroad; (2) that such railroad was crossed by a public highway or street or traveled place whereon he had the legal right to travel; (3) that upon approaching said crossing there was a *neglect* to give the prescribed signals; (4) that there was an actual collision *on* such crossing with the engine or cars of the railroad company; (5) that he was actually injured while *on* said crossing in such collision; and (6) that the failure to give the signals *contributed* to the said injuries as a *proximate cause* thereof.

So, it will be observed that it is only after the plaintiff has established the first *five* enumerated facts by the preponderance of the evidence, thereby discharging the burden placed upon him as in any other civil action to establish the

material elements of the action, that the failure to discharge the legal duty to give the signals raises a *prima facie* presumption, the nature of which we shall discuss more fully hereafter, in the first instance, that such failure, contributing to an injury at the crossing and under the circumstances within the statutory contemplation, was the proximate cause thereof, without any *shift* of the burden ultimately (expressly declared to follow in the Georgia statute) to establish such causal connection of proximate cause as an essential element of a recovery. If a *prima facie* presumption cannot be made to serve, under universally sanctioned principles, this purpose without invading grave constitutional inhibitions, as we shall further show, then the use of the presumption in the future must be discarded in the field of inferential proof with many reproachful and fruitless efforts to secure a reasonable and safe administration of justice in the Courts and judicial pathways of procedure venerable with age must be closed that have heretofore been available and supported by reason, long sanctioned practice, and, in many cases, demanded by the necessities of the transaction to defeat gross miscarriages of justice.

These differences are further emphasized when it is understood that no such presumption arises under the statute as that in the case of destruction of property by fire communicated by the engine of a railroad company passing along its tracks or injury to a passenger or stock.

It is firmly established in this State that in actions at common law proof of damage to property caused by fire communicated by a railroad engine raises a *prima facie* presumption of negligence which casts the burden on the railroad company to show that its engine was constructed, equipped, and managed with care (*Wilson v. Atlanta & C. Airline Railroad Company,* 16 S. C., 588; *Brown v. Railroad Company,* 19 S. C., 39; *Hutto v. Railway Company,* 81 S. C., 567, 62 S. E., 835; *Birt v. Southern Railway Company,* 87 S. C., 239, 69 S. E., 233), and in an action under Section

4910, Volume 3, Code of Laws 1922, making a railroad liable for injuries to property by "fire communicated by its locomotive engines, or originating within the limits of the right of way of said road in consequence of the act of any of its authorized agents or employees," it is not even necessary to allege or prove negligence to establish liability (*Brown v. Railway Company*, 87 S. C., 314, 69 S. E., 510), nor is such a statute imposing such liability an abridgement of the privileges or immunities of the railroad corporation, nor does it deprive it of its property without due process of law, nor deny to it the equal protection of the laws, within the meaning of the Fourteenth Amendment to the Federal Constitution. *McCandless v. Railroad Company*, 38 S. C., 103, 16 S. E., 429, 18 L. R. A., 440; *Brown v. Railway Company*, 67 S. C., 481, 46 S. E., 283, 100 Am. St. Rep., 756; *Insurance Company v. Railroad Company*, 41 S. C., 408, 19 S. E., 858; *St. Louis, etc., Railway Company v. Mathews*, 165 U. S., 1, 17 S. Ct., 243, 41 L. Ed., 611; *Atchison, etc., Railroad Company v. Matthews*, 174 U. S., 96, 19 S. Ct., 609, 43 L. Ed., 909.

According to the rule in this State, when a passenger is injured on the train of a carrier through some agency or instrumentaility of transportation, or some act of omission or commission of its servants, a presumption of negligence arises (*Steele v. Railway Company*, 55 S. C., 389, 33 S. Ct., 509, 74 L. Ed., 756; *Jarrell v. Railway Company*, 58 S. C., 494, 36 S. E., 910; *Doolittle v. Railway Company*, 62 S. C., 142, 40 S. E., 133; *Stewbridge v. Railway Company*, 65 S. C., 447, 43 S. E., 968; *Hunter v. Railway Company*, 72 S. C., 340, 51 S. E., 860, 110 Am. St. Rep., 605; *Brown v. Railway Company*, 83 S. C., 53, 64 S. E., 1012; *Williford v. Railway Company*, 85 S. C., 301, 67 S. E., 302; *McKittrick v. Traction Company*, 88 S. C., 91, 70 S. E., 414; *Comer v. Railroad Company*, 105 S. C., 480, 90 S. E., 188), and such presumption *continues throughout the trial* of the case. *Mack v. Railway Company*, 52 S. C., 323, 29

S. E., 905, 40 L. R. A., 679, 68 Am. St. Rep., 913; *Ritter v. Railway Company*, 83 S. C., 213, 65 S. E., 175; *Williford v. Railway Company*, 85 S. C., 301, 67 S. E., 302; *McKittrick v. Traction Company*, 88 S. C., 91, 70 S. E., 414.

Again, it was held at an early period in this State, 1851, from the obvious necessities of the case, that the mere proof of the killing of or injury to stock by the train of a railroad company in its passage along its track raises a presumption of negligence on the part of the company, which presumption remains throughout the trial of the case, is not affected by the introduction of testimony by the defendant, unless such evidence is sufficient to rebut it by an affirmative showing that the injury was due to accident, or was unavoidable, or free from negligence, in the absence of which, upon proof of ownership and value, the plaintiff is entitled to recover. *Zemp v. Wilmington & M. R. Co.*, 9 Rich. Law, 93, 64 Am. Dec., 763; *Wilson v. Wilmington & M. R. Co.*, 10 Rich. Law, 52; *Murray v. South Carolina R Co.*, 10 Rich. Law, 227, 70 Am. Dec., 219; *Roof v. Railroad Co.*, 4 S. C., 61; *Rowe v. Railroad Co.*, 7 S. C., 170; *Jones v. Columbia & Greenville R. Co.*, 20 S. C., 249; *Fuller v. Port Royal & A. R. Co.*, 24 S. C., 133; *Walker v. Columbia & G. R. Co.*, 25 S. C., 141; *Joyner v. South Carolina Ry. Co.*, 26 S. C., 49, 52, 1 S. E., 52; *Guess v. S. C. Railway Co.*, 30 S. C., 163, 166, 9 S. E., 18; *Molair v. Port Royal & A. Railroad Co.*, 31 S. C., 510, 517, 10 S. E., 243; *Salley v. Manchester & A. R. R. Co.*, 54 S. C., 480, 32 S. E., 526, 71 Am. St. Rep., 810; *Steele v. Southern Railway*, 55 S. C., 391, 33 S. E., 509, 74 Am. St. Rep., 756; *Doolittle v. Southern Railway*, 62 S. C., 137, 40 S. E., 133; *Fowles v. Seaboard Air Line Railway,* 73 S. C., 307, 53 S. E., 534; *McLeod v. Atlantic Coast Line R. Co.*, 93 S. C., 72, 76 S. E., 19, 705; *Moorer v. Atlantic Coast Line R. Co.*, 103 S. C., 281, 88 S. E., 15.

Not a *single* case brought to our attention by attorneys for appellants, and relied on in support of the proposition,

sustains the characterization of the disputable presumption arising under the crossing statute to the effect that it remains "throughout the entire case" and is to be weighed as opposing *evidence* in fixing liability.

Of the cases cited, the cases of *McLeod v. Railway Company*, 93 S. C., 71, 76 S. E., 19, 705, and *Thompson v. Railroad Company*, 113 S. C., 261, 102 S. E., 11, involved injuries *to passengers;* the cases of *Matthews v. Railroad Company*, 98 S. C., 204, 82 S. E., 138; *Ervin v. Railroad Company*, 106 S. C., 354, 91 S. E., 317, and *Perryman v. Railroad Company*, 105 S. C., 34, 89 S. E., 497; injuries to *stock*, and the cases of *Baker v. Western Union Telegraph Company*, 87 S. C., 174, 69 S. E., 151 and *Glenn v. Railroad Company*, 96 S. C., 357, 80 S. E., 898, did not relate to this presumption as they were decided *before* the case of *McBride v. Railroad Company, supra,* in which case the presumption was defined.

A plain and fair comprehension of the *McBride case,* obvious and unambiguous in its forceful utterances, leaves no ground for misapprehension of the legal status of the presumption, in the light of our prior cases on the subject of inferential proof, as the following language by the learned justice clearly shows: "It must be borne in mind that this presumption does not mean that the causal relationship between the failure to give the signals and the injury is shown conclusively. The presumption merely establishes a *prima facie* case, which may be overcome by testimony, whether given for the *plaintiff* or for the *defendant.* This was made clear in the *Strother case;* and later, in the *Drawdy case,* it was held that the presumption in favor of the plaintiff was overcome by the testimony in favor of the defendant. * * *" (Italics added.)

It does not necessarily follow, however, that the causal relationship must be shown, *in the first instance,* by evidence, since, as in other cases, a presumption, if reasonable and well founded, *may arise from the proven facts.* The

rule as to causal relation between the violation of the statute and the injury is clearly stated in 20 R. C. L., at page 43, as follows: " 'The meaning of proximate cause in this connection has been explained as follows: If the injury complained of is a natural and probable consequence of a violation of the statute, then that violation is correctly taken as the proximate cause of the injury. If the very injury has happened which was intended to be prevented by the statute law, that injury must be considered as directly caused by the nonobservance of the law. But if the injury is one that happened by causes independent of the violation of the statute, it is not actionable on the basis of that violation.' " (Italics added.)

There is absolutely no inconsistency, as the slightest reflection discloses, in the conclusions reached by the Court in the *McBride case* requiring the causal connection between the *act* of *wrong* and the *injury* to be a contribution in the sense of a proximate cause and the use of a rebuttable *prima facie* presumption to show, "in the first instance," the existence of such a connection. Where the *prima facie* presumption may be properly invoked in any case to operate in favor of one upon whom rests the burden of proof, it is necessary, as in this case, to establish the fact or facts upon which the presumption operates and ultimately the inference therefrom, if contradicted and an essential element of the particular action, in discharge of such burden, and such is the clear conclusion of Mr. Justice Stabler as expressed in the foregoing language.

In the case of *Mobile, etc., Railroad Company v. Turnipseed,* 219 U. S., 35, 31 S. Ct., 136, 137, 55 L. Ed., 78, 32 L. R. A. (N. S.), 226, Ann. Cas., 1912-A, 463, to which a more extended reference will be made hereafter, the Court said:

"The law of evidence is full of presumptions either of fact or law. The former are, of course, disputable, and the strength of any inference of one fact from proof of an-

other depends upon the generality of the experience upon which it is founded. For a discussion of some common-law aspects of the subject, see *Cincinnati, etc., Railway v. South Fork Coal Company,* 71 C. C. A., 316, 139 F., 528 et seq., 1 L. R. A. (N. S.), 533.

"Legislation providing that proof of one fact shall constitute *prima facie* evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government. Statutes, national and State, dealing with such methods of proof in both civil and criminal cases abound, and the decisions upholding them are numerous. * * * *Adams v. New York,* 192 U. S., 585, 24 S. Ct., 372, 48 L. Ed., 575; *People v. Cannon,* 139 N. Y., 32, 34 N. E., 759, 36 Am. St. Rep., 668 [and others]."

In the case of *Home Insurance Company v. Weide,* 78 U. S. (11 Wall.), 438, 440, 20 L. Ed., 197, the Court, discussing this question, said: "It is well settled that if the evidence offered conduces in any reasonable degree to establish the probability * * * of the fact in controversy, it should go to the jury. It would be a narrow rule and not conducive to the ends of justice, to exclude it on the ground that it did not afford full proof of the nonexistence of the disputed fact. Besides, presumptive evidence proceeds on the theory that the jury can infer the existence of a fact from another fact that is proved, and most usually accompanies it. * * * Many of the affairs of human life are determined in Courts of justice in this way, and experience has proved that juries, under the direction of a wise Judge, do not often err in the reasoning which leads them to a proper conclusion on such evidence. And if they should happen to reach a wrong conclusion, the Court has in its own hands the mode and measure of redress."

In determining the judicial *effect* of a presumption in a trial, the "burden of proof" must not be confounded with a "presumption of fact."

The general rule is, in the absence of valid statutory enactment to the contrary, that the burden of proof rests upon him who has the affirmative of the issue and does not shift to the defendant even when aided, in the first instance, by a rebuttable presumption.

Under the cases of *Sweeney v. Erving,* 228 U. S., 240, 33 S. Ct., 416, 57 L. Ed., 815, Ann. Cas., 1914-D, 905; *Railroad v. Henderson, supra,* and *Railroad v. Turnipseed, supra,* and many others, such a disputable *prima facie* presumption has been expressly declared not to violate the Fourteenth Amendment to the Federal Constitution that only *cast* upon the company the *duty* of *producing* some *evidence* to the *contrary;* that does not "under the guise of regulating the presentation of evidence *preclude* the party from the *right* to *present his defense* to the *main fact presumed";* that "does not operate to *deny a fair opportunity* to repel it"; that does not prevent the defendant from *"going forward* with his *evidence* on the *particular point* to which the *presumption* relates"; that only creates a *liability* in the *absence* of *other evidence contradicting* the same; and that only makes the *prima facie* case sufficient, as a matter of law, in the case of *default* in such *rebutting* testimony.

So, it is evident, regardless of any doubt or uncertainty that may be thought to exist, if any, and we repeat that there is not the slightest ground therefor, since the *McBride case* and subsequent cases adhering to the rule therein declared, that the *prima facie* presumption of proximate cause arising in such cases from a failure to give the signals, regarded from the standpoint of either its basis, nature, the reasons supporting it, or procedural effect in the ultimate determination of liability, is not to be viewed, and has never been adjudged by this Court, as continuing throughout the trial of the cause and unaffected by the introduction of rebutting testimony as in the case of the presumptions of *negligence* in the operation or equipment of

trains arising from the mere proof of the injury or killing of stock or passengers.

Such presumption cannot in any view be "used to support conflicting *allegations* of *negligence*" for the reason, as already shown, that it can only relate to the *single* act of an alleged and proven failure to give the signals, nor can it be considered and weighed as opposing evidence for the purposes allowed under the Georgia statute as construed in the *Henderson case*. Such presumption only imposes, "in the first instance," the duty on the company of producing testimony to the contrary on the issue of proximate cause with every fair opportunity of so doing. It creates no legal liability against the railroad company except in default of contradictory testimony tending to overcome the same which may be "given for the *plaintiff* or for the *defendant*," under the express language of the *McBride case,* in which event the burden of proof does not *shift,* as required under the Georgia statute upon proof of the collision, from the plaintiff, to establish such proximate cause by the *evidence* adduced, which, of course, may be done by inferential or circumstantial as well as by direct or positive proof.

If this effect be denied, then no presumption is applicable to any case and the term becomes an idle and meaningless one in the law of evidence.

A zealous effort to bring the statute under the denunciation of the *Henderson case,* which seems to be erroneously placed in this contention in a relation of judicial rivalry with the imputed infirmities of the *McBride case* in joint condemnation, leads the appellant into the wholly untenable position that the company, in rebuttal of the plaintiff's case, is *confined* to the *two affirmative defenses* of willful conduct or a violation of the law by the plaintiff at the time of the collision.

The fact can scarcely be deemed controversial that the presumption does not in the least preclude the company or cut it off from a fair opportunity of bringing forward all

competent and relevant testimony arising out of and surrounding the transaction and of such evidentiary force as tends to negative the fact or inference of proximate cause, regardless of the *conduct* of the *plaintiff*. It may be true that in many cases such testimony would incidentally establish contributory fault on the part of the plaintiff or his agent, but the defendant is not *confined* to such evidence if other testimony is afforded by the occurrence, nor is it logical to conclude that if such testimony has the twofold effect it must become as a matter of law so closely assimilated and confined to the one as legally to exclude it as relevant and competent testimony tending to negative the other.

It may also be quite true that the *mere fact* of *collision* or *injury* at a grade crossing furnishes no basis for any inference as to whether the accident was caused by the *negligence* of either party or both or without the fault of any one, for it may have been purely an *accident* or only avoidable by that infallible prudence, foresight, and judgment with which no human being is endowed; but is the same observation logically applicable to the reverse view of the proposition?

It certainly will not be questioned that an actual *absence* of *knowledge* of an approaching train bears a "rational connection" between such *fact* and resulting injury at a crossing by the same train. Indeed, such fact, regardless of whether the *traveler should* have known, except in cases of utter heedlessness or irresponsible action, is probably the most fruitful cause of such collisions and injuries. If this be true, then it naturally follows that the reason cannot revolt at the assumption of a "rational connection" between the failure to observe a requirement, amounting to a disobedience of the law, intended solely to give effective *knowledge* and *warning* of such approach and the strong probability of resulting injury.

The likelihood of injury from such cause is not more universally recognized than in the wholesome requirement of

the common law, which imposes the duty on railroad companies in perhaps every jurisdiction in the Union where that system of jurisprudence obtains (including the State of Mississippi), and regardless of supplementary State and municipal enactments and regulations on the subject, to give to the public and individuals such warning of the approach of trains to public crossing as will guard them against danger in the use thereof. *Miller v. A. C. L. Railroad Company,* 140 S. C., 123, 138 S. E., 675.

The existence of a "rational connection" between the failure of a railroad company to give adequate warning of the approach of a train to public grade crossing, and the great probability of consequent injury to a traveler using the same, forcefully impressed by the facts and circumstances surrounding the present case, is nowhere more emphatically recognized and stated than by the Federal Supreme Court in its discussion in some of the cases of the respective duties and rights of the company and traveler at such crossings and the presumptions attaching to the conduct of the latter in using the same. *Continental Improvement Company v. Stead,* 95 U. S., 161, 164, 24 L. Ed., 403; *Texas & Pacific Railway Company v. Gentry,* 163 U. S., 353, 16 S. Ct., 1104, 41 L. Ed., 186; *Baltimore, etc., Railroad Company v. Landrigan,* 191 U. S., 461, 24 S. Ct., 137, 140, 48 L. Ed., 262.

In the first case mentioned, the Court speaking on this question, in part, said:

"If a railroad crosses a common road on the same level, those travelling on either have a legal right to pass over the point of crossing, and to require due care on the part of those travelling on the other, to avoid a collision. Of course, these mutual rights have respect to other relative rights subsisting between the parties. From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the

crossing first: it is the duty of the wagon to wait for the train. The train has the preference and right of way. But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way. Such warning must be reasonable and timely. * * *.

"The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with and conditioned upon the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition. * * * "

In commenting on the presumption that the law presumes that a person approaching a railroad crossing uses care, in the case last cited, the Court used this language: "The presumption is founded on a law of nature. We know of no more universal instinct than that of self-preservation—none that so insistently urges to care against injury. It has its motives to exercise in the fear of pain, maiming, and death. There are few presumptions based on human feelings or experience that have surer foundation than that expressed in the instruction objected to."

It is, therefore, quite evident that the *Henderson case* is not controlling in this case, as it was the absence of such rational connection between the fact proved and the fact to be inferred—injury and negligence—that furnished the main ground of the decision in that case.

It may be observed further in connection with this question, and in emphasis of the distinction shown, that the *inference* of *negligence* from mere proof of *injury* is quite a different thing from the *proof* of *both* and an inference of causal proximate connection between the *two,* where one is likely to result in the other.

While reasoning may not "lead from the occurrence *back* to its cause," yet it will not, and should not, be condemned as arbitrary if it should lead *forward from an act* of default,

or *back* to it, so likely to result in injury in the light of human experience and observation, as to necessitate, in the interest of the public safety, a legislative preventive measure and a *prima facie* presumption based thereon, as an additional sanction, to such injury. The Georgia statute, repudiated in the *Henderson case*, and the Mississippi statute, approved in the *Turnipseed case*, both lead from injury back, but our statute from a likely cause forward and back.

Even if it were permissible, contrary to the foregoing conclusion, for the presumption under our statute to be considered and weighed as opposing evidence, still the *Henderson case* would be wholly inapplicable for the reason that it was held as the basic ground of that decision that there was no rational connection between a mere proof of *collision*, in the absence of evidence, and the alleged negligent acts charging the company with legal responsibility therefor, or that either party, or both, was presumed negligent in a given case from the mere fact of the occurrence, whereas under our statute such reasonable connection does exist between the specific fact of failure to give the signals established by the *evidence*, and the injury, also shown by the *evidence*, the reasonableness of which is not only confirmed by general experience but as above stated sanctioned by universal judicial recognition.

Indeed, the Federal Supreme Court has not only held time and again that such rebuttable presumptions, judicially declared to arise from a given state of facts, are not in contravention of the due process of law and equal protection of the law provisions of the Fourteenth Amendment to the Federal Constitution, but has fully recognized the power of a State Legislature to create a "conclusive presumption" from a "given state of facts."

In the case of *Jones v. Brim*, 165 U. S., 180, 17 S. Ct., 282, 283, 41 L. Ed., 677, in which Mr. Justice White, afterwards Chief Justice, delivered the opinion of the Court, and which may be regarded as one of the leading cases on the

subject, the following enactment of the State of Utah was under review: "Any person who drives a herd of horses, mules, asses, cattle, sheep, goats or swine over a public highway, where such highway is constructed on a hillside, shall be liable for all damage done by such animals in destroying the banks or rolling rocks into or upon such highway."

It was contended, and this was the sole question presented for the consideration of the Court, that the statute was a denial of the due process of law and equal protection of the law·clauses of the Fourteenth Amendment, in that it made an unjust and unreasonable discrimination against persons who drove a "herd" of the animals therein named over a hillside public highway by subjecting them to damages done in the use thereof while all other persons were permitted to use such highways without such liability.

In denying this contention the Court pointed out clearly that the amendment was intended only to prevent an arbitrary deprivation of life or liberty or an arbitrary spoliation of property; that it did not operate as a limitation upon. the "subjects upon which the police power of a State may be lawfully exerted"; that the "establishment, maintenance, and control of public highways" were clearly embraced within the exercise of such powers and that the legislation obviously came within the "narrowest definition" of such power and should be "properly classed as a reasonable regulation incident to the right to establish and maintain such highways."

In applying the principles thus declared to a further discussion of the constitutionality of the statute, and more particularly in reference to the nature and extent of the legal presumption therein created, the Court said: ·

"It was obviously the province of the State Legislature to provide the nature and extent of the legal presumption to be deduced from a given state of facts, and the creation by law of such presumption is, after all, but an illustration of

the power to classify. When the statute is properly understood, therefore, the argument of the plaintiff in error amounts to an assertion that the whole subject of the probative force to arise by operation of law from any specified state of fact is, in every sense, by the effect of the fourteenth amendment, removed from the jurisdiction of the local authorities.

"The statute, being general in its application, embracing all persons under substantially like circumstances, and not being an arbitrary exercise of power, does not deny to the defendant the equal protection of the laws. *Lowe v. Kansas,* 163 U. S., 81, 88, 16 S. Ct., 1031 [41 L. Ed., 78]; *Duncan v. Missouri,* 152 U. S., 377, 14 S. Ct., 570 [38 L. Ed., 485]. So, also, as the statute clearly specifies the condition under which the presumption of neglect arises, and provides for the ascertainment of liability by judicial proceedings, there is no foundation for the assertion that the enforcement of such ascertained liability constitutes a taking of property without due process of law."

If the Legislature in our statute had in express terms created a legal presumption of proximate cause predicated upon a failure to give· the signals instead of requiring the plaintiff to establish such contribution by the evidence, there being a direct, natural, and reasonable connection between the *act,* the neglect to give the signals, and the *injury,* which the former is intended solely to prevent, it is difficult to understand wherein the exercise of such legislative power would be in the least antagonistic to the principles declared in the foregoing case.

The constitutionality of the crossing statute has been assailed in this State in the cases of *Kaminitsky v. Northeastern Railroad Company,* 25 S. C., 53, and *Drennan v. Southern Railway-Carolina Division,* 91 S. C., 507, 75 S. E., 45, 50.

In the former case, decided April 24, 1886, the exceptions attacking the constitutionality of the statute under the Con-

stitution of 1868 are not embodied in the report of the case, but it is apparent from the discussion that the power of the Legislature to enact laws regulating the running of trains across public highways and to declare the omission of prescribed signals to be negligence was assailed, and that the proof of negligence from a mere failure to give the signals was a change of evidence made operative *after* the original grant of franchise to the company and only applicable to the corporations therein contemplated.

In the disposition of these objections, the Court said:

"But it is said that the provision in regard to the proof of negligence was not really an amendment of the charter, but a change in the law of evidence. If this were so, it would not make it unconstitutional. 'The right to have one's controversies determined by existing rules of evidence is not a vested right. Like other rules affecting the remedy, they must therefore at all times be subject to modification and control by the legislature.' Cool. Con. Lim., 452, 453. We do not, however, consider that by the aforesaid provision the main object of the legislature was to make a change in the law of evidence, but to induce compliance with the previous requirement as to signals. The rule of evidence as to negligence was made to apply only in case of failure to give the required signals, and it is manifest that the purpose was to give an additional sanction to the provision requiring the signals to be given.

"Besides the matter of charter and vested right, Mr. Pierce says: 'A railroad company, although no power is reserved to amend or repeal its charter, is nevertheless subject, like individuals, to such police laws as the legislature may from time to time enact for the safety and health of citizens and the general convenience and good order. Its property and essential franchises are, indeed, protected by the constitution; but the company itself is not thereby placed above the laws. It was not the design of that instrument to disarm the States of the power to pass laws to protect the

lives, limbs, health, and morals of citizens and to regulate their conduct towards each other, and the mode of using property so that different owners may not injure each other. Such laws may incidentally impair the value of franchises or of rights held under contracts, but they are enacted *diverso intuitu,* and are not within the constitutional inhibition.' Pierce on Railroads, 460, and numerous authorities. Cooley Con. Lim., 710; *People ex rel. Kimball v. B. & A. R. R. Co.,* 70 N. Y., 570; *State v. Berlin,* 21 S. C., 292 (53 Am. Rep., 677); *Messenger v. Penn. R. R. Co.,* 36 N. J., 407 (13 Am. Rep., 457).

"In the case last cited Chief Justice Beasley, of the Supreme Court of New Jersey, expressed it thus: 'A company of this kind is invested with important prerogative franchises, among which are the rights to build and use a railway, and to charge and take tolls and fares. These prerogatives are grants from the government, and public utility is the consideration for them. Although in the hands of a private corporation, they are still sovereign franchises, and must be used and treated as such. They must be held in trust for the general good.' We do not think it was error in law to hold that the sections aforesaid were constitutional."

In the case of *Drennan v. Southern Railway Company, supra,* it was held that Section 2139 of the Civil Code of 1902, new Section 4925 of the Civil Code of 1922, was not in violation of the due process of law and equal protection of the law clauses of the Federal and State Constitutions, in that it denies to the railroad companies therein mentioned the defense of ordinary contributory negligence in the cases stated therein, while it gives a cause of action for negligence to those injured, allowing the injured to recover when their own ordinary contributory negligence is a proximate cause of the injury and thereby imposing one standard for the railroad company and another for the traveler; the conclusion of the Court being thus stated:

"We proceed to consider whether the said section is in violation of the fourteenth amendment to the Constitution of the United States, which provides that no State shall deprive any person of life, liberty, or property without due process of law.

"In construing Section 2139 of the Code of Laws, the Court stated, in *Kaminitsky v.* [*Northeastern*] *Ry.*, 25 S. C., 53, that the main object of that section was not to make a change in the law of evidence, but to induce compliance with the statutory requirements as to signals. But, even if the intention of said section was to change the rules of evidence in the manner therein stated, it would not be repugnant to the provisions of the fourteenth amendment to the Federal Constitution as to due process of law. Rules of evidence may be changed whenever the grounds for such change are reasonable. A conspicuous instance of such change appears in Section. 15, Art. 9, of the Constitution, which provides that 'knowledge by any employee injured, of the defective or unsafe character of any machinery, ways, or appliances, shall be no defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars, or engines voluntarily operated by them.' Another instance of such change appears in the Act of Congress, approved the 11th of June 1906, * * * which provides that in all actions brought against common carriers to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, where his contributory negligence is slight, and that of the employer was gross in comparison; but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. One reason for the change in the rules of evidence by Section 2139 of the Code of Laws is that in many instances the party colliding with the train of cars is instantly killed; and the railroad company

would have a decided advantage if it was only required to prove that the person injured was guilty of ordinary contributory negligence. The necessity of the case requires proof of more than ordinary negligence on the part of the person injured. A like necessity caused a change in the rules of evidence, where cattle were killed by a railroad train, as will be seen by the case of *Danner v. [S. C.] Railway,* 4 Rich. [Law.], 329, 55 Am. Dec., 678, in which it was held that there was a presumption of negligence arising from the mere act of killing the stock."

If the statute be, as held in the *McBride case,* one of regulation "for the prevention of accidents and concerning the responsibility thereof"; if the "Legislature evidently had in mind that injury to person or property was very likely to occur at a railroad crossing unless proper warning of the approach of trains was given to travelers, and intended by the statute to prevent such injury by requiring the railroad to give certain definitely described signals"; if the presumption as defined attaching to the proof of failure to comply therewith affords only an additional sanction to the provision requiring such signals to be given and an inducement to compliance with such requirement—then it is quite certain that the statute is clearly sustained under a valid exercise of the police power of the State and otherwise provides due process of law as against the objections urged in full conformity with the guaranty of the Federal Constitution as construed by the Federal Supreme Court and our own decisions.

We will now proceed to determine whether the statute is repugnant to the equal protection of the law clause of the Federal Constitution.

As many of the foregoing cases referred to in our discussion of the objections to the statute based upon an alleged violation of the due process of law clause also dispose of this question, any extended reference thereto would involve a needless repetition and prolongation of this opinion, and our attention will for this reason be directed only

to a brief consideration of a few of the cases that bear more directly on this specific question.

The contention seems to be, stated in a different form and in a more limited compass, that the statute works an unjust discrimination against railroad companies for injuries inflicted at the contemplated places in favor of vehicles, other common carriers, travelers, and its offending servants, upon whom the duty devolves to give the prescribed signals, using such crossings: (1) In that the person or corporation is relieved of the legal consequence of *simple* or *ordinary* negligence, while the railroad corporation is held liable for the same kind of negligence; (2) that the failure to give the signals under the statute is held by this Court to afford some evidence of willfulness and raises a presumption of proximate cause of the resultant injury; (3) that such presumption is unreasonable and arbitrary as opposing evidence to be weighed against other evidence and is effective in support of a recovery by plaintiff except as against preponderating evidence; and that (4) in all other actions by persons and corporations there is no such presumption.

It is sufficient to say without further comment that the last three questions are disposed of by our foregoing conclusions and the first narrowed to an inquiry as to whether the statute embodies an unjust or discriminatory classification in its application to railroad corporations.

A similar question was presented to this Court in the case of *Drennan v. Southern Railway Company, supra,* which seems to have escaped the attention of both parties to this controversy, and disposed of in this language:

"The rule as to classification, under the fourteenth amendment to the Federal Constitution, is thus clearly stated by the Court, through Mr. Justice Van Devanter, in the case of *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S., 61, 31 S.. Ct., 337, 55 L. Ed., 369 [Ann. Cas., 1912-C, 160]:

" '(1) The equal protection clause of the fourteenth amendment does not take from the State the power to

classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done, only, when it is without any reasonable basis, and therefore is purely arbitrary. (2) A classification having some reasonable basis, does not offend against that clause, merely because it is not made with mathematical nicety, or, because in practice, it results in some inequality. (3) When the classification in such a law, is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. (4) One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.'

"Section 2139 of the Code of Laws was the outgrowth of the necessity for legislation to protect the traveling public at highway crossings, and it is peculiarly applicable to railways; in fact it is difficult to conceive *how any but railways* could be included in the classification. This case, therefore, is embraced within the principles announced in the case last mentioned."

In the case of *Mobile, etc., Railroad Company v. Turnipseed, supra,* the action was for damages by the personal representative for the killing of a section foreman in the service of the company.

The section of the Mississippi Code (Section 1985, Code of 1906), whose constitutionality was assailed under the Fourteenth Amendment to the Federal Constitution, is as follows: "In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotives or cars of such company shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury. This section shall also apply to passengers and employees of railroad companies."

The classification authorized by this enactment was challenged in that case as being repugnant to the equal protection of the law clause of the Federal Constitution, but was sustained by the Court in the following language:

"This contention, shortly stated, comes to this: that although a classification of railway employees may be justified from general considerations based upon the hazardous character of the occupation, such classification becomes arbitrary and a denial of the equal protection of the law the moment it is found to embrace employees not exposed to hazards peculiar to railway operation.

"But this Court has never so construed the limitation imposed by the 14th Amendment upon the power of the State to legislate with reference to particular employments as to render ineffectual a general classification resting upon obvious principles of public policy, because it may happen that the classification includes persons not subject to a uniform degree of danger. The insistence, therefore, that legislation in respect of railway employees generally is repugnant to the clause of the Constitution guaranteeing the equal protection of the law, merely because it is not limited to those engaged in the actual operation of trains, is without merit. The intestate of the defendant in error was not engaged in the actual operation of trains. But he was nevertheless engaged in a service which subjected him to dangers from the operation of trains, and brought him plainly within the general legislative purpose. The case in hand illustrates the fact that such employees, though not directly engaged in the management of trains, are nevertheless within the general line of hazard inherent in the railway business. * * *"

Continuing the discussion of the subject, the Court further said:

"We are not impressed with the argument that the Supreme Court of Mississippi, in construing the act, has declared that the effect of the statute is to create a presumption of liability, giving to it, thereby, an effect in excess of a

mere temporary inference of fact. The statutory effect of the rule is to provide that evidence of an injury arising from the actual operation of trains shall create an inference of negligence, which is the main fact in issue. The only *legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary.* When that is done the inference is at an end, and the question of negligence is one for the jury, upon all of the evidence. In *default of such evidence,* the defendant, in a civil case, must lose, *for the prima facie case is enough as matter of law.*

"The statute does not, therefore, deny the equal protection of the law, or otherwise fail in due process of law, because *it creates a presumption of liability* * * * *in the absence of the other evidence contradicting such inference.*

"That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law, it is only essential that there shall be *some rational connection* between the *fact proved* and the *ultimate fact presumed,* and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to *preclude the party from the right to present his defense to the main fact thus presumed.*

"If a legislative provision not unreasonable in itself, prescribing a rule of evidence, in either criminal or civil cases, does *not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue,* there is no ground for holding that due process of law has been denied him." (Italics added.)

Tested by these principles, the statute as construed and applied by the Mississippi Court in this case is unobjectionable. It is not an unreasonable inference that a derailment of railway cars is due to some negligence, either in construction or maintenance of the track or trains, or some carelessness in operation.

From the foregoing considerations it must be obvious that the application of the act to injuries resulting from the "running of locomotives and cars" is not an arbitrary classification, but one resting upon considerations of public policy arising out of the character of the business.

In the case of *Powell v. Pennsylvania,* 127 U. S., 678, 8 S. Ct., 992, 995, 1257, 32 L. Ed., 253, with a similar question under consideration, the Court, in part, declared:

" 'Every possible presumption,' Chief Justice Waite said, speaking for the Court, in *Sinking Fund Cases,* 99 U. S., 718 (25 L. Ed., 496), 'is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule.' See also *Fletcher v. Peck,* 6 Cranch, 128 (3 L. Ed., 162) ; *Dartmouth College v. Woodward,* 4 Wheat, 518, 625 (4 L. Ed., 629) ; *Livingston (County) v. Darlington,* 101 U. S., 407 (25 L. Ed., 1015). * * * If all that can be said of this legislation is that it is unwise, or unnecessarily oppressive to those manufacturing or selling wholesome oleomargarine as an article of food, their appeal must be to the legislature, or to the ballot-box, not to the judiciary. The latter cannot interfere without usurping powers committed to another department of government. * * *

"The objection that the statute is repugnant to the clause of the fourteenth amendment forbidding the denial by the state to any person within its jurisdiction of the equal protection of the laws is untenable. The statute places under the same restrictions, and subjects to like penalties and burdens all who manufacture, or sell, or offer for sale, or keep in possession to sell, the articles embraced by its prohibitions, thus recognizing and preserving the principle of equality among those engaged in the same business. *Barbier v. Connolly* (113 U. S., 27, 5 S. Ct., 357, 28 L. Ed., 923),

*supra; Soon Hing v. Crowley,* 113 U. S., 703, 5 S. Ct., 730 (28 L. Ed., 1145) ; *Missouri Pacific Railway Co. v. Humes,* 115 U. S., 512, 519, 6 S. Ct. 110 (29 L. Ed., 463)."

It is claimed, however, that the statute is in violation of the Fourteenth Amendment to the Federal Constitution because motor vehicles carrying freight and passengers are entitled to the benefits of the crossing statutes, while the railroads are thereby discriminated against, presumably, because these motor vehicles are not also subject to its provisions.

A complete and satisfactory answer to this view is found in the case of *McCutchen v. A. C. L. Railway Company,* 81 S. C., 74, 61 S. E., 1108, 1109, where this Court, quoting with approval from the cases of *Johnson et al. v. Spartan Mills,* 68 S. C., 339, 47 S. E., 695, 1 Ann. Cas., 409, and *Simmons v. W. U. Tel. Co.,* 63 S. C., 430, 41 S. E., 521, 57 L. R. A., 607, said:

" 'Legislation is not unequal or discriminatory in the sense of the equality clause of the Constitution, merely because it is special or limited to a particular class. The decisions of the United States Supreme Court establish that the legislature has power to make a classification of persons and property for public purposes, provided such classification is not arbitrary and bears reasonable relation to the purpose of be effectuated, and the equality clause is not violated when all within the designated class are treated alike.'

"A classification may be reasonable which for certain purposes imposes liability upon a railroad as distinguished from *other common carriers. (Mo. Pac.) Ry. (Co.) v. Mackey,* 127 U. S., 205, 8 S. Ct., 1161, 32 L. Ed., 107 ; *St. Louis, etc., Ry Co. v. Mathews,* 165 U. S., 1, 17 S. Ct., 243, 41 L. Ed., 611."

In sustaining the constitutionality of an act of the Missouri Legislature establishing the liability of any railroad corporation for injury to property by a communicated fire either directly or indirectly, against this objection, the Court

after an elaborate review of similar statutes and others relating to the public safety, health, and morals in many states, including the South Carolina fire statute, and interpretative decisions, in the case of *St. Louis, etc., Railway Company v. Mathews*, 165 U. S., 1, 17 S. Ct., 243, 252, 41 L. Ed., 611, uses this language:

" 'The objection that the statute of Missouri violates the clause of the Fourteenth Amendment, which prohibits a state to deny to any person within its jurisdiction the equal protection of the laws, is as untenable as that which we have considered. The statute makes no discrimination against any railroad Company in its requirements. Each company is subject to the same liability, and from each the same security, by the erection of fences, gates and cattle guards, is exacted, when its road passes through, along or adjoining inclosed or cultivated fields or uninclosed lands. There is no evasion of the rule of equality, where all companies are subjected to the same duties and liabilities under similar circumstances.' 115 U. S., 523, 6 S. Ct., 110, 114 (29 L. Ed., 463).

"Like decisions, for like reasons, were made in the similar cases of *Minneapolis & St. Louis Railway v. Beckwith*, 129 U. S., 26, 9 S. Ct., 207 (32 L. Ed., 585), and *Same v. Emmons*, 149 U. S., 364, 13 S. Ct., 870 (37 L. Ed., 769), in which last case this Court, again speaking by Mr. Justice Field, said: 'The extent of the obligations and duties required of railway corporations or companies by their charters does not create any limitation upon the state against imposing all such further duties as may be deemed essential or important for the safety of the public, the security of passengers and employees, or the protection of the property of adjoining owners. The imposing of proper penalties for the enforcement of such additional duties is unquestionably within the police powers of the states. No contract with any person, individual or corporate, can impose restrictions

upon the power of the states in this respect.' 149 U. S., 367, 368, 13 S. Ct., 870, 871 (37 L. Ed., 769).

"In *Missouri Pacific Railway v. Mackey*, 127 U. S., 205, 8 S. Ct., 1161 (32 L. Ed., 107), the judgment of the Supreme Court of Kansas in 33 Kan., 298, 6 P., 291, maintaining the constitutionality of a statute of the state, imposing for the future upon every railroad corporation, organized or doing business in the state, a liability, to which no person or corporation was before subject, for all damages done to any of its employees by negligence or mismanagement of their fellow-servants, was affirmed by this Court, saying: 'The hazardous character of the business of operating a railway would seem to call for special legislation with respect to a railroad corporation, having for its object the protection of their employees, as well as the safety of the public. The business of other corporations is not subject to similar dangers to their employees; and no objections, therefore, can be made to the legislation on the ground of its making an unjust discrimination. It meets a particular necessity *and all railroad corporations are, without distinction, made subject to the* same liabilities. As said by the Court below, it is simply a question of legislative discretion whether the *same liabilities* shall be applied to *carriers by canal and stage coaches,* and to *persons* and *corporations* using steam in manufactories.' " (Italics added.)

In the case of *Watson v. State of Maryland*, 218 U. S., 173, 30 S. Ct., 644, 646, 54 L. Ed., 987, a Maryland legislative enactment requiring the registration of physicians and surgeons applicable in terms only to those engaged in the practice prior to a certain date, an exemption from its operation under stated conditions of certain resident and nonresident physicians, was vigorously assailed upon the ground that undue discrimination was shown in these exceptions; that the classification made was unreasonable and arbitrary and the equal protection of the laws denied. In denying this contention the Court declared: "It was therein

held (referring to the case of *Williams v. State of Arkansas,* 217 U. S., 79, 30 S. Ct., 493, 54 L. Ed., 673, 18 Ann. Cas., 865) that regulations of a particular trade or business essential to the public health and safety were with the legislative capacity of the state in the exercise of its police power, and that unless such regulations are so unreasonable and extravagant as to interfere with property and personal rights of citizens, unnecessarily and arbitrarily, they are within the power of the state; and that the classification of the subjects of such legislation, so long as such classification has a reasonable basis, and is not merely arbitrary selection without real difference between the subjects included and those omitted from the law, does not deny to the citizen the equal protection of the laws."

Were it deemed essential to the further vindication of the statute against this assault, numerous other cases might be referred to in which this doctrine is uniformly approved and reiterated by the Federal Supreme Court.

As the statute (Civ. Code 1922 § 4903) imposes the prescribed duties on *"each* locomotive engine or interurban car" whose track is crossed by a public highway, street, or traveled place, exacts from *each* the same security in the interest of the public safety, relates to *all* persons using the latter at such designated places, and subjects the company to the "same duties and liabilities under similar circumstances," we are at a loss to conceive wherein the statute is violative of any phase of the equal protection of the law clause of the Federal Constitution upon the grounds stated.

Insofar as the exceptions are based upon an alleged difference in the standard of care or rule of evidence required of the injured person and the corporation at such places, it is sufficient to state that the identical question was raised in the case of *Drennan v. Southern Railway, supra,* and disposed of in the reasoning and conclusion of that case not in the least conflict with any of the Federal Supreme Court decisions on the subject.

But it is contended further that the statute is in violation of the clause of the Federal Constitution that devolves upon the Congress alone the right to regulate commerce between the states.

Assuming that the appellant's train was, at the time and place of respondent's injuries on said public highway crossing, engaged in interstate commerce (*Gladson v. Minnesota,* 166 U. S., 427, — S. Ct., 627, 41 L. Ed., 1064; *International, etc., Company v. Pigg,* 217 U. S., 91, 30 S. Ct., 481, 54 L. Ed., 678, 27 L. R. A. (N. S.), 493, 18 Ann. Cas., 1103; *Galveston, etc., Railroad Company v. Woodbury,* 254 U. S., 357, 41 S. Ct., 114, 65 L. Ed., 301), it is well settled by numerous decisions of the Federal Supreme Court that in the absence of congressional enactment on the subject, the states are not denied the power to promote by legislative enactment safety in the physicial operation of railroad trains within their territory, even though engaged in interstate commerce, provided such requirements are not "arbitrary, or pass beyond * * * a fair judgment as to what exigency demands." *Southern Railway Company v. King,* 217 U. S., 524, 30 S. Ct., 594, 54 L. Ed., 868; *Atlantic, etc., Railroad Company v. Georgia,* 234 U. S., 280, 34 S. Ct., 829, 58 L. Ed., 1312.

In discussing the subject of the "extent of the power and the occasions for its exercise" and in the determination of the power of the state over commerce, the general subject has been divided. into three classes: First, those in which the power of the state is exclusive; second, those in which the states may act in the absence of legislation by Congress; third, those in which the action of Congress is exclusive and the state cannot act at all. *Covington & C. Bridge Company v. Kentucky,* 154 U. S., 204, 14 S. Ct., 1087, 38 L. Ed., 962; *W. U. Telegraph Company v. James,* 162 U. S., 650, 16 S. Ct., 934, 40 L. Ed., 1105; *Southern Railway Company v. Reid,* 222 U. S., 424, 32 S. Ct., 140, 56 L. Ed., 257.

It is also well settled that in the absence of congressional enactment or a valid and controlling regulation of the Interstate Commerce Commission, under its congressional grant of power on the subject, and no such act or regulation has been brought to our attention, the police power of the state can be validly exercised on many occasions to insure the faithful and prompt performance of duty within its limits on the part of those engaged *in interstate commerce* and that the exercise of such power is in aid of interstate commerce and does not burden it though *incidentally affecting it. A. C. L. Railway Company v. Muzursky,* 216 U. S., 122, 30 S. Ct., 378, 54 L. Ed., 411; *W. U. Telegraph Company v. James,* 162 U. S., 650, 16 S. Ct., 934, 40 L. Ed., 1105; *Western Union Telegraph Company v. Mill Company,* 218 U. S., 406, 31 S. Ct., 59, 54 L. Ed., 1088, 36 L. R. A. (N. S.), 220, 21 Ann. Cas., 815; *Missouri, etc., Railroad Company v. Larabee Flour Mills,* 211 U. S., 612, 29 S. Ct., 214, 53 L. Ed., 352; *Southern Railway Company v. Reid,* 222 U. S., 424, 32 S. Ct., 140, 56 L. Ed., 257; *Stone v. Farmers' Loan & Trust Company,* 116 U. S., 307, 6 S. Ct., 334, 388, 1191, 29 L. Ed., 636; *Smith v. Alabama,* 124 U. S., 465, 8 S. Ct., 564, 31 L. Ed., 508; *Hennington v. Georgia,* 163 U. S., 299, 16 S. Ct., 1086, 41 L. Ed., 166; *New York, etc., Railroad Company v. New York,* 165 U. S., 628, 17 S. Ct., 418, 41 L. Ed., 853; *Gladson v. Minnesota,* 166 U. S., 427, 17 S. Ct., 627, 41 L. Ed., 1064; *Smith v. Alabama,* 124 U. S., 465, 8 S. Ct., 564, 571, 31 L. Ed., 508.

In the course of an able and elaborate opinion by that venerable and able jurist, Mr. Justice Holmes, in the case of *Erie Railroad Company v. Board of Public Utility Commissioners,* 254 U. S., 394, 41 S. Ct., 169, 171, 65 L. Ed., 322, in which the City of Patterson in promotion of the public safety undertook to require the railway company to separate grades at a number of crossings at a great expense, and in which the usual defenses of violation of the due

process of law, equal protection of the law, contract impairment, privilege and immunity abridgement, and interstate commerce clauses of the Federal Constitution were invoked, it was said, in part, in response to the last contention: "If it reasonably can be said that safety requires the change it is for them to say whether they will insist upon it, and neither prospective bankruptcy nor engagement in interstate commerce can take away this fundamental right of the sovereign of the soil. * * * *Denver & Rio Grande R. R. Co. v. (City and County of) Denver,* 250 U. S., 241, 244, 39 S. Ct., 450, 63 L. Ed., 958; *Union Dry Goods Co. v. Georgia Public Service Co.,* 248 U. S., 372, 39 S. Ct., 117, 63 L. Ed., 309 (9 A. L. R., 1420); *Louisville & Nashville R. R. Co. v. Mottley,* 219 U. S., 467, 31 S. Ct., 265, 55 L. Ed., 297, 34 L. R. A. (N. S.), 671; *Northern Pacific Railway Co. v. (Minnesota ex rel.) Duluth,* 208 U. S., 583, 28 S. Ct., 341, 52 L. Ed., 630; *Manigault v. Springs,* 199 U. S., 473, 480, 26 S. Ct., 127, 50 L. Ed., 274. If the burdens imposed are so great that the road cannot be run at a profit it can stop, whatever the misfortunes the stopping may produce. *Brooks-Scanlon Co. v. Railroad Commissioners,* 251 U. S., 396, 40 S. Ct., 183, 64 L. Ed., 323."

In the case of *Smith v. Alabama, supra,* Mr. Justice Matthews, delivering the opinion of the Court, in part, said: "It is to be remembered that railroads are not natural highways of trade and commerce. They are artificial creations; they are constructed within the territorial limits of a state, and by the authority of its laws, and ordinarily by means of corporations exercising their franchises by limited grants from the state. The places where they may be located, and the plans according to which they must be constructed, are prescribed by the legislation of the state. Their operation requires the use of instruments and agencies attended with special risks and dangers, the proper management of which involves peculiar knowledge, training, skill, and care. The safety of the public in person and property demands the

use of specific guards and precautions. The width of the gauge, the character of the grades, the mode of crossing streams by culverts and bridges, the kind of cuts and tunnels, the mode of crossing other highways, the placing of watchmen and signals at points of special danger, the rate of speed at stations and through villages, towns, and cities, are all matters naturally and peculiarly within the provisions of that law from the authority of which these modern highways of commerce derive their existence. The rules prescribed for their construction and for their management and operation, designed to protect persons and property, otherwise endangered by their use, are strictly within the limits of the local law. *They are not per se regulations of commerce;* it is only when they operate as such in the circumstances of their application, and conflict with the expressed or presumed will of congress exerted on the same subject, that they can be required to give way to the supreme authority of the Constitution."

Indeed, it may be said, in view of the unquestionable power of the states under the cases discussed, to which may be added many more, that the exercise of such power as manifested in the provisions of the statute, so far from being an unreasonable, unjust, and arbitrary burden upon and interference with interstate commerce by railroad transportation, is in legislative intent, judgment, and application directly in aid thereof, for it must be apparent that a compliance with the duty to give the prescribed signals at such places as the public have the right to cross can only lessen the probability of accident resulting in loss of property, injury, and death, and consequent interruptions and delays in interstate journeys, prompted at least by the natural instincts and promptings of humanity in case of such happenings, and of possible injuries to operating equipment derailments, and other obvious circumstances.

As these sections, as construed by this Court, are maintainable upon the foregoing views, with other reasons that

might be offered if deemed necessary, it is evident without further comment that the contention that such sections prevent the adoption and operation of the rule announced in the *Goodman case,* in alleged violation of these clauses of the Federal Constitution, is entirely without merit.

The foregoing views and conclusions fully support the circuit Judge in sustaining the constitutionality of these sections of the Code of Laws against the attack made thereon.

It is too well settled to warrant the citation of authority that in his charge to the jury the presiding Judge is not required to adopt the language of any specific request submitted in stating the legal proposition embodied therein, if the same is applicable to the issues properly involved and covered in his general charge.

An application of this principle to the very full, clear, and satisfactory charge in this case, readily seen to be in substantial accord with the views herein announced, renders it free from the remaining imputed vices.

The jury were fully instructed on the essentials of the action, the issues involved, negligence, contributory negligence and willfulness, the respective duties of the company and traveler, under the statute and at common law, upon approaching a highway crossing, the burden of proof resting on each and the basis and measure of damages, in the course of which they were specifically instructed that it was "not every negligence which subjects one to payment of damages," but that "it is necessary to show that negligence was the proximate cause of the injury complained of"; that under the statute the plaintiff must not only prove the failure to give the signals, but the causal connection between such failure and the alleged injury, and must prove "both by the preponderance of the *evidence";* that while a presumption of proximate cause arises from a failure to give the signals, such presumption is and would be rebuttable by evidence and the jury "should consider *any* and *all* evidence that may be

in the case in determining the question of proximate cause"; that there was a presumption of innocence in favor of the company with regard to the violation of the statute; and that the "burden is on the plaintiff of proving that the statute was violated."

These extracts, with numerous others that might be cited, from the charge, which, in justice to the presiding Judge and the parties litigant, must be considered as a whole, impress it as a fair and adequate declaration of the law on all relevant phases of the controversy.

In order to induce to a clear understanding of the questions herein presented, considered, and decided, the exceptions too numerous to be considered seriatim, requests to charge that were denied by the presiding Judge, and the charge of the latter, should be incorporated in the report of the case.

All the exceptions presented have received the careful consideration of the Court and are overruled.

Wherefore, it is the judgment of this Court that the judgment of the Circuit Court be, and the same is, hereby affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER and MESSRS. T. S. SEASE, H. F. RICE, W. H. TOWNSEND, C. C. FEATHERSTONE, J. HENRY JOHNSON, E. C. DENNIS, C. J. RAMAGE, G. B. GREENE, PHILIP H. STOLL and G. DEWEY OXNER, Circuit Judges, concur.

MR. M. M. MANN, CIRCUIT JUDGE, concurs in result.

MESSRS. S. W. G. SHIPP and W. H. GRIMBALL, CIRCUIT JUDGES, dissent.

MR. M. M. MANN, CIRCUIT JUDGE (concurring in result) : With only the constitutional questions argued before the Court *en banc*, I feel that the reasoning of the Federal Supreme Court in the *Turnipseed case*, while not conclusive, is sufficiently suggestive to warrant my concurrence in that part of the leading opinion which treats these questions.

Mr. W. H. Grimball, Circuit Judge (dissenting): Being unable to agree with the opinion of Acting Associate Justice Smith and dissenting therefrom, I adopt as my dissenting opinion the opinion prepared by Mr. Justice Cothran when this cause was first heard in the Supreme Court. His opinion will be reported and is as follows:

"This action commenced on April 6, 1929, was brought to recover damages in the sum of $25,000.00 for personal injuries alleged to have been sustained by the plaintiff as a result of a collision between a passenger train of the defendant railroad company, operated by its engineer and codefendant, William Smith, between Charleston and Greenville, and an automobile at a public highway crossing of defendant railroad company's track between Manning, S. C., and Alcolu. At the time of such collision, the plaintiff was riding on the front seat of such automobile, which was being driven by her husband. The complaint charges negligence and willfulness on the part of the defendants in the operation of such train in a number of particulars.

"The answer, after denying the allegations of the complaint, sets up the affirmative defenses of gross contributory negligence and of contributory willfulness on the part of the plaintiff, and in addition alleges that Sections 4903 and 4925 of Volume 3 of the Code of Laws of South Carolina 1922, on which plaintiff relied in her complaint, were null and void as being a regulation of interstate commerce in violation of Article 1, Section 8, Subdivision 3, of the Constitution of the United States, and as construed by the Supreme Court of South Carolina that it denied to the defendant railroad company the equal protection of the laws and deprived it of its property without due process of law, in violation of the provisions of the Constitution of the United States.

"The case was tried before Judge M. L. Bonham and a jury at the October, 1929, term of the Court of Common Pleas for Clarendon County. At such trial, the defendant

railroad company introduced evidence showing that the train involved in the collision was a regular passenger train, running between Charleston and Greenville, and that it was regularly engaged, and on the day of the accident was actually engaged, in the transportation of interstate passengers and interstate mail. At the close of the case, the defendant moved for a directed verdict in its favor on the grounds in brief that the evidence was insufficient to establish either negligence or willfulness on the part of such defendant as the proximate cause of the alleged injury to plaintiff, that plaintiff's own gross contributory negligence was a proximate cause of her injuries, and that the signaling statute was an unlawful attempt to regulate interstate commerce and violated the 'due process of law' and 'the equal protection of the law' clauses of the Federal Constitution. After argument, the presiding Judge overruled the motion for a directed verdict.

"The defendant railroad company, by its requests to charge, repeated its attack on the constitutionality of the sections, and in addition asked for an interpretation of them and an application thereof to the present case. In its requests to charge, the defendant railroad further took the position that as the case involved a train engaged in interstate commerce and also involved the questions of due process of law and the equal protection of the law, that the rule declared by the Supreme Court of the United States in *Baltimore & Ohio R. Co. v. Goodman,* 275 U. S., 66, 48 S. Ct., 24, 72 L. Ed., 167, 56 A. L. R., 645, was applicable and should be given to the jury as the test of liability in this case. These requests were refused.

"The jury rendered a verdict in favor of the plaintiff for $7,500.00. A motion for a new trial, based on the same grounds as the motion for a directed verdict, was duly made and was refused. Judgment in favor of the plaintiff was thereupon entered on the verdict, and from such judgment the present appeal is prosecuted.

"The collision occurred at a point upon the railroad where it was crossed by a highway, at right angle, between Manning and Alcolu, some five miles apart; going north from Manning the railroad crosses Black River swamp, near Manning, and then curves to the left into a perfectly straight track which extends to the crossing, which is about 1,200 yards from the curve emerging from the swamp, and about 500 yards beyond. The plaintiff and her husband, he driving and she sitting on his right upon the front seat, left Manning, in an automobile with curtains drawn, in the rain, going north on Highway No. 26; this highway also crosses the swamp on the west side of the railroad, and as it emerges from the swamp, parallels the railroad as far as Alcolu, and some sixty feet from the track; about 1,200 yards from the swamp, the highway intersects another highway, No. 4, which crosses the railroad at right angle, 60 feet from the intersection. On account of work being done on Highway No. 26 between Manning and Sumter, the party had to detour on Highway No. 4 at its intersection with No. 26. As the driver turned from No. 26 into No. 4, he slowed down his car and testified that he looked through the drawn curtains toward Manning but saw no train and heard none; he drove upon the crossing and immediately was struck by the train going from Manning north. Between this highway crossing and the river swamp, there are no obstructions between the railroad track and Highway No. 26, and any person driving on Highway No. 26 and turning into Highway No. 4 has a plain and unobstructed view of the track and of any trains thereon all the way to the curve after the track comes out of the river swamp, which is nearly a mile. These physical facts are established not only by the oral testimony in the case but also by the plat which was put in evidence.

"Mr. Ford testified that he looked *as well as he could* down the track and saw no train; Mrs. Ford testified that

'the curtains were up, being a rainy misty morning I did the best I could to look for trains. *It was hard to see.*'

"We have this situation presented: An automobile, with the curtains drawn, is being driven in a pouring rain, along a highway parallel with a railroad and very near to it, which gave the driver notice of the railroad; the driver makes a short turn, 60 feet from the crossing, informed of the crossing by a sign post 10 feet high with cross-arms, and makes for the crossing without stopping or otherwise taking the slightest care for his safety; at any point from the turn to the crossing a coming train on a perfectly straight track could have been seen for nearly a mile; there was not an obstruction to his view at any point on the approach; it appears too plainly that if he had taken the slightest care he is obliged to have seen the train, the Court is not bound to accept his statement that he looked and did not see it or to consider it evidence, admittedly inadequate.

"The case is governed by the rule laid down in the case of *Cable Piano Company v. Southern R. Co.,* 94 S. C., 143, 77 S. E., 868, upon the authority of which the defendant's motion for a directed verdict should have been granted upon the ground of gross negligence upon the part of the driver and of the plaintiff. This case has been frequently cited with approval and has not been overruled. There is a suggestion in the case of *Whitehead v. A. C. L. R. Co.,* 153 S. C., 339, 150 S. E., 769, that it cannot be considered a 'leading case' by reason of later decisions, but so far as we have discovered the criticism has gone no further.

"The most important feature in the appeal is the constitutionality of Sections 4903 and 4925, Vol. 3, Code 1922; it is attacked by the defendant upon the ground that it violates the due process and equal protection provisions of the Federal Constitution.

"It can hardly be questioned that Section 4903 is a valid exercise of the police power of the State and its constitutionality sustained. Taken in connection, however, with Sec-

tion 4925 and the decisions of this Court construing and applying them, the statutory provisions must be held to offend the clauses of the Federal Constitution invoked by the defendant.

"For convenience these sections are reproduced:

"Section 4903: 'A bell of at least thirty pounds weight and a steam or air whistle shall be placed on each locomotive engine or interurban car, and such bell shall be rung or such whistle sounded by the engineer or fireman or motorman at the distance of at least five hundred yards from the place where the railroad crosses any public highway or street or traveled place, and be kept ringing or whistling until the engine or interurban car has crossed such highway or street or traveled place; and if such engine or car shall be at a standstill within less distance than one hundred rods of such crossing such bell shall be rung or such whistle sounded for at least thirty seconds before such engine or interurban cars shall be moved, and shall be kept ringing or sounding until such engine or interurban cars shall have crossed such public highway or street or traveled place: Provided, That a gong of not less than ten inches in diameter may be placed upon interurban cars in lieu of a bell as herein required and shall be sounded as herein provided.'

"Section 4925: 'If a person is injured in his person or property by collision with the engines or any car or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required by this Chapter, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment, as provided in the preceding Section, unless it is shown that in addition to a mere want of ordinary care the person injured, or the person having charge of his person or property, was at the time of the collision guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross wilful negligence or unlawful act contributed to the injury.'

"It is so firmly settled as to be axiomatic that the construction and interpretation of a state statute by the highest Court of the state are to be considered just as much a part of it as if actually expressed in the text. *Supreme Lodge, Knights of Pythias, v. Meyer,* 265 U. S., 30, 44 S. Ct., 432, 68 L. Ed., 885; *Leffingwell v. Warren,* 2 Black, 599, 17 L. Ed., 261; *St. Louis, etc., Co. v. Kansas City,* 241 U. S., 419, 36 S. Ct., 647, 60 L. Ed., 1072; *Standard Oil Co. v. Graves,* 249 U. S., 389, 39 S. Ct., 320, 63 L. Ed., 662; *Thornton v. Duffy,* 254 U. S., 361, 41 S. Ct., 137, 65 L. Ed., 304; *Ward & Gow v. Krinsky,* 259 U. S., 503, 42 S. Ct., 529, 66 L. Ed., 1033, 28 A. L. R., 1207; *Bunch v. Cole,* 263 U. S., 250, 44 S. Ct., 101, 68 L. Ed., 290; *Missouri, ex rel. Hurwitz v. North,* 271 U. S., 40, 46 S. Ct., 384, 70 L. Ed., 818; *Chicago, etc., R. Co. v. Risty,* 276 U. S., 567, 48 S. Ct., 396, 62 L. Ed., 703.

"And in the light of such construction and interpretation, the validity of such statute under the Federal Constitution must be determined. *Price v. Illinois,* 238 U. S., 446, 35 S. Ct., 892, 59 L. Ed., 1400; *Missouri, etc., R. Co. v. Nebraska,* 164 U. S., 403, 17 S. Ct., 130, 41 L. Ed., 489; *W. W. Cargill Co. v. Minnesota,* 180 U. S., 452, 21 S. Ct., 423, 45 L. Ed., 619; *Lindsley v. Natural, etc., Co.,* 220 U. S., 61, 31 S. Ct., 337, 55 L. Ed., 369, Ann. Cas., 1912-C, 160; *Purity, etc., Co. v. Lynch,* 226 U. S., 192, 33 S. C., 44, 57 L. Ed., 184.

"The interpretation of the signaling statute given by the decisions of this Court consists of the following propositions:

"1. The failure to give the statutory signals is negligence *per se. Strother v. S. C. & G. R. Co.,* 47 S. C., 375, 25 S. E., 272; *Callison v. Charleston & W. C. R. Co.,* 160 S. C., 123, 90 S. E., 260; *Keel v. Seaboard A. L. R. Co.,* 108 S. C., 390, 95 S. E., 64; *Timmons v. Southern R. Co.,* 138 S. C., 82, 136 S. E., 27.

"2. If it appears that the signals were not given and that an injury resulted from a collision between the train and a traveler on the highway at a crossing, it will be presumed that the failure to give the signals was the proximate cause of the collision and injury, and warrants a recovery by the plaintiff without further proof. *Strother v. S. C. & G. R. Co.,* 47 S. C., 375, 25 S. E., 272; *Edwards v. Southern R. Co.,* 63 S. C., 271, 41 S. E., 458; *Bishop v. Southern R. Co.,* 63 S. C., 532, 41 S. E., 808; *Turbyfill v. Atl. & C. A. L. R. Co.,* 83 S. C., 325, 65 S. E., 278; *Lee v. Northwestern R. Co.,* 84 S. C., 125, 65 S. E., 1031; *Lawson v. Southern R. Co.,* 91 S. C., 201, 74 S. E., 473; *Peeples v. Seaboard A. L. R. Co.,* 115 S. C., 115, 104 S. E., 541; *Miller v. A. C. L. R. Co.,* 140 S. C., 123, 138 S. E., 675; *McBride v. A. C. L. R. Co.,* 140 S. C., 260, 138 S. E., 803; *Brogdon v. Northwestern R. Co.,* 141 S. C., 238, 139 S. E., 459; *Glenn v. Southern R. Co.,* 145 S. C., 41, 142 S. E., 801; *Whitehead v. A. C. L. R. Co.,* 153 S. C., 339, 150 S. E., 769.

"3. Under the circumstances detailed in subdivision 2, the failure 'is sufficient to warrant a reasonable inference of recklessness, willfulness, or wantonness, and therefore to carry that issue to the jury,' but it is not recklessness, willfulness, or wantonness *per se. Goodwin v. A. C. L. R. Co.,* 82 S. C., 321, 327, 64 S. E., 242; *Rowe v. Southern R. Co.,* 85 S. C., 25, 66 S. E., 1056; *Callison v. Charleston & W. C. R. Co.,* 106 S. C., 123, 90 S. E., 260; *Keel v. Seaboard A. L. R. Co.,* 108 S. C., 390, 95 S. E., 64; *Miller v. A. C. L. R. Co.,* 140 S. C., 123, 138 S. E., 675; *Key v. C. & W. C. R. Co.,* 144 S. C., 164, 142 S. E., 336.

"4. The only defense available to the railroad company, aside from a denial of liability, is that the plaintiff at the time of the accident was acting in violation of law or was acting with a 'conscious disregard of consequences' amounting to willfulness, *Glenn v. Southern R. Co.,* 145 S. C., 41, 142 S. E., 801.

"5. The doctrine of the Supreme Court of the United States in the case of *B. & O. R. Co. v. Goodman,* 275 U. S., 66, 48 S. Ct., 24, 72 L. Ed., 167, 56 A. L. R., 645, is denied in South Carolina. *Key v. Car. & N. W. R. Co.,* 150 S. C., 29, 147 S. E., 625; *Holladay v. A. C. L. R. Co.,* 150 S. C., 243, 147 S. E., 927.

"6. Although holding that the failure to give the signals is only a *prima facie* presumption rebuttable by evidence, the Court holds that the presumption does not vanish on the introduction of opposing evidence, but throughout the entire case it is given the effect of evidence to be weighed against opposing evidence of the defendant. *Baker v. Western Union Tel. Co.,* 87 S. C., 174, 69 S. E., 151; *McLeod v. A. C. L. R. Co.,* 93 S. C., 71, 76 S. E., 19, 705; *Glenn v. A. C. L. R. Co.,* 96 S. C., 357, 80 S. E., 898; *Matthews v. A. C. L. R. Co.,* 98 S. C., 204, 82 S. E., 138; *Ervin v. Atlantic Coast Line R. Co.,* 106 S. C., 354, 91 S. E., 317; *Perryman v. Charleston & W. C. R. Co.,* 105 S. C., 34, 89 S. E., 497; *Thompson v. Atl. C. L. R. Co.,* 113 S. C., 261, 102 S. E., 11; *McBride v. A. C. L. R. Co.,* 140 S. C., 260, 138 S. E., 803.

"The oft-repeated declaration that the failure of a railroad company to comply with the requirements of the signaling statute is *negligence per se,* is an unfortunate and misleading expression of the law; it is a confusion of the colloquial interpretation of negligence with the legal, and is the source of the error which appears in the *McBride case,* that the failure referred to creates a presumption that it was the proximate cause of a collision. The colloquial interpretation of the term is synonymous with breach of duty; the legal is an *actionable* wrong. It would be more accurate to say that it is a breach of duty; it cannot be negligence in the legal sense unless the *breach of duty* is shown to have caused injury.

"Judge Cooley, in his work on Torts (3d Ed.), 1324, defines 'negligence' 'as the failure to observe for the pro-

tection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury.'

"In 45 C. J., 632, it is said: 'In every case involving negligence there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of defendant to protect plaintiff from the injury; (2) Failure of defendant to perform their duty; and (3) Injury to plaintiff from such failure of the defendant. When these elements are brought together they unitedly constitute actionable negligence, and the absence of any one of these elements renders the complaint bad or the evidence insufficient.'

"To say that the failure constitutes negligence *per se* is therefore erroneous, in that it presumes, even *prima facie,* the three elements of actionable negligence above referred to, which cannot be the law.

"The decisions of this Court have injected into the statute a still more objectionable feature: That evidence of the failure to comply with the statute carries a presumption that such failure was the proximate cause of the collision and injury. The writer of this opinion has expressed his views fully upon this subject in a dissenting opinion in the *McBride case,* 140 S. C., 260, 138 S. E., 803, 807, and will not add anything to what is there written except to repeat a quotation from one of our own cases, which crystallizes the law upon the subject: 'When evidence of negligence is only *prima facie,* it is subject to rebuttal, but when there is negligence *per se,* it is conclusive of that question. The fact that there is negligence *per se,* does not, however, tend to show, that such negligence is actionable. The question whether negligence is actionable, depends upon the further question, whether such negligence was the direct and proximate cause of the injury.' *Whaley v. Ostendorff,* 90 S. C., 281, 73 S. E., 186.

"Under the doctrine declared by the South Carolina decisions, upon the trial of a crossing case, the issue is not, as in all other tort cases, whether the failure to give signals was the proximate cause of the collision; that issue is settled by the presumption, the sole issue is whether the signals were given. If a single witness should testify that he was in a position to hear and did not hear the signals, the case must be submitted to a jury, and the presumption in the absence of opposing evidence will be sufficient to sustain a verdict against the railroad company based upon both negligence and wilfulness. The extent to which this presumption is carried appears in the case of *Lawson v. R. Co.*, 91 S. C. 201, 74 S. E., 473, 477, where the Court said: 'Where an act is negligence *per se,* the jury *must find negligence.* Where it is mere evidence of negligence, the jury may not find that the defendant was negligent. The failure to sound the bell or whistle has been declared by this Court to be negligence, and if the jury had believed from the evidence that neither the bell nor the whistle was sounded, then *they were bound to find for the plaintiff.'*

"In fairness to the trial Judge it should be stated that he did not charge that the presumption was conclusive; he charged the jury in line with the declaration of the Court in the *McBride case:* 'It must be borne in mind that this presumption does not mean that the causal relationship [connection?] between the failure to give the signals and the injury is shown conclusively. The presumption merely establishes a *prima facie* case, which may be overcome by testimony, whether given for the plaintiff or for the defendant,' and in the same connection charged that the presumption arising from the failure to give the signals may be considered with any and all other evidence in the case.

"That this declaration is erroneous, as violative of the constitutional provisions, is demonstrated by the rulings of the Supreme Court of the United States in the case of *Western & Atlantic R. Co. v. Henderson,* 279 U. S., 639,

49 S. Ct., 445, 447, 73 L. Ed., 884, decided May 27, 1929.

"In the *Henderson case* the plaintiff's intestate was killed in a collision at a railroad grade crossing, between a truck he was driving and a train of the railroad company. Plaintiff recovered under a statute of Georgia which declared that on proof of the happening of such an accident, a presumption arose that it was due to the negligence of the railroad company as a proximate cause.

"Assuming that the Court, following its own decision in the case of *Mobile, etc., R. Co. v. Turnipseed,* 219 U. S., 35, 31 S. Ct., 136, 138, 55 L. Ed., 78, 32 L. R. A. (N. S.), 226, Ann. Cas. 1912A, 463, would have sustained the Georgia statute in the *Henderson case,* if the statute, either by its terms or by a construction of it by the Georgia Court, had provided for simply a *prima facie* presumption of negligence, it seems clear that the trial Judge in the case at bar, and the Court in the *McBride case,* misapprehended the office of a *prima facie* presumption, in according to it the effect of evidence to be weighed against opposing evidence. (See quotation above.)

"In the *Turnipseed case* the plaintiff relied upon a Mississippi statute which provided: 'Proof of injury inflicted by the running of the locomotives or cars of such [railroad] company shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury.' (Code Mis. 1906, § 1985.)

"The Supreme Court refused to sustain an attack upon the statute as arbitrary and in violation of the due process clause of the Constitution, saying: 'The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done, the inference is at an end, and the question of negligence is one for the jury, upon all of the evidence. * * * The statute does not * * * fail in due process of law, because it creates a presumption of liability,

since its operation is only to supply an inference of liability in the absence of other evidence contradicting such inference.'

"Differentiating the *Turnipseed case*, the Court in the *Henderson case* said: 'That case is essentially different from this one. Each of the state enactments raises a presumption from the fact of injury caused by the running of locomotives or cars. The Mississippi statute created merely a temporary inference of fact that vanished upon the introduction of opposing evidence. *Gulf, M. & N. R. Co. v. Brown*, 138 Miss. 39, 66, 102 So., 855 *et seq.; Columbia & G. Ry. Co. v. Fondren*, 145 Miss., 679, 110 So., 365. That of Georgia as construed in this case creates an inference that is given effect of evidence to be weighed against opposing testimony, and is to prevail unless such testimony is found by the jury to preponderate.'

"The Court further said:

" 'Upon the mere fact of collision and resulting death, the statute is held to raise a presumption that defendant and its employees were negligent in each of the particulars alleged, and that every act or omission in plaintiff's specifications of negligence was the proximate cause of the death, and it makes defendant liable unless it showed due care in respect of every matter alleged against it. And, by authorizing the jury, in the absence of evidence, to find negligence in the operation of the engine and train, the Court necessarily permitted the presumption to be considered and weighed as evidence against the testimony of defendant's witnesses tending affirmatively to prove such operation was not negligent in any respect.

" 'Appellee insists that Section 2780 is valid, and argues that the presumption, *being one established by statute, has the effect of evidence* and that it is for the jury to decide whether the company's evidence is sufficient to overcome the presumption; that "it should not as a matter of law be dissipated the instant any testimony is taken against it,"

and that the issue is to be determined on a consideration of all the evidence including the presumption.

" 'Legislation declaring that proof of one fact or group of facts shall constitute *prima facie* evidence of an ultimate fact in issue is valid if there is a rational connection between what is proved and what is to be inferred. A *prima facie presumption* casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates. *A statute creating a presumption that is arbitrary, or that operates to deny a fair opportunity to repeal it, violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property.'*

"And then it reached this conclusion: 'The *presumption* raised by Section 2780 is *unreasonable* and *arbitrary*, and violates the due process clause of the Fourteenth Amendment. *Manley v. Georgia, supra; McFarland v. American Sugar* [*Refining*] *Co.*, 241 U. S., 79, 60 L. Ed., 899, 36 S. Ct., 498; *Bailey v. Alabama*, 219 U. S., 219, 55 L. Ed., 191, 31 S. Ct., 145.'

"The point under discussion is clearly elaborated in the case of *Kirch v. A. C. L. R. Co.* (C. C. A.), 38 F. (2d), 963, 964. That case involved a construction of a Florida statute which was a copy of the Georgia statute construed in the *Henderson case.* The statute was upheld against an attack upon its constitutionality; the railroad company contending that the decision should be ruled by the *Henderson case. The* Court pointed out the distinction between the two cases thus: 'There is no doubt that the Florida statute was copied from the Georgia statute; but the Florida Supreme Court has given to it a construction that is different from the construction which the Supreme Court held in the *Henderson case* has been given by the Supreme Court of Georgia. In the just cited case it was said that the statute as construed by the Georgia decisions "creates an inference

that is given effect of evidence to be weighed against opposing testimony, and is to prevail unless such testimony is found by the jury to preponderate." The uniform construction of the statute by the Supreme Court of Florida is that it merely creates a presumption that disappears and comes to an end upon the submission of proof by a railroad company that its agents have exercised ordinary and reasonable care.'

"In the *McBride case*, this Court declared that collision and injury at a crossing is 'the natural and probable consequence of the failure to give the signals.' The Supreme Court of the United States declared otherwise in the *Henderson case*, using this language: 'The mere fact of collision between a railway train and a vehicle at a highway grade crossing *furnishes no basis* for any inference as to whether the accident was caused by negligence of the railway company or of the traveler on the highway, or of both, or without fault of any one. *Reasoning does not lead from the occurrence back to its cause.*'

"A statute, complemented by the decisions of this Court, that makes it possible to say as a matter of law what was the proximate cause of an accident can not be due process of law. Such a statute in effect declares that the presumption created thereby is not rebuttable. True, the railroad in such a suit is accorded the privilege of offering evidence, but of what possible avail is this when the jury is at liberty to render a verdict against it on the vital element of proximate cause *without a vestige of testimony as to proximate cause?* Manifestly, when the overcoming of the presumption as to proximate cause thus rests solely on the whim and caprice of the jury, it is but a mockery to say the defendant railroad is afforded the opportunity to rebut such presumption. Such a right of rebuttal may be given in form, but it is effectually denied in substance. The so-called right of rebuttal 'keeps the promise to our ear and breaks it to our hope.' A fair

opportunity to repel the presumption being denied, due process of law is not afforded.

"The plaintiff here has not made out such a case as should entitle her to recover either in law or in morals. Take away the incredible testimony of her and her husband that they did not hear any signals, and the arbitrary presumption applied to the finding of the jury thereon, and her case would collapse. A recovery by the plaintiff under the facts of this case solely by virtue of this presumption proves convincingly the fact that it is arbitrary and unreasonable.

"Prior to the decision in the *McBride case,* the Circuit Courts could direct verdicts in crossing cases and they would be sustained. But since that case and those that have followed it, no Circuit Judge can now say as a matter of law either that this arbitrary presumption has been overcome, or that the plaintiff was responsible for the accident. Under the present state of the decisions, the jury and the *jury alone* can say whether this presumption has been rebutted, and *the jury can render a verdict on the presumption alone without a scintilla of evidence to support it.* This is exactly what was condemned in the *Henderson case.*

"The statute is unconstitutional for another reason: It makes an unreasonable discrimination against railroad corporations in the matter of the contributory negligence of the injured person as a defense to the action for damages; it requires the railroad corporation to show that the injured person, 'in addition to a mere want of ordinary care,' was guilty of gross or willful negligence or a violation of the law; a condition applicable to no other class of tort-feasors under the sun; it has no earthly connection with the police regulation contained in Section 4903; it contributes nothing in aid of the enforcement of that section, and was evidently adopted for the purpose of making a railroad corporation an insurer of the safety of every traveler regardless of his conduct. In the case of *Glenn v. Southern R. Co.,* 145 S. C., 41, 142 S. E., 801, 803, the Court goes even be-

yond the construction theretofore adopted in holding that the gross negligence referred to in the statute is the equivalent of intentional conduct on the part of the traveller, practically a suicide. It is there said: 'The term "gross negligence" does not stand by itself in the statute, but the context characterizes the meaning and *gives it the significance of willfulness.*' In other words, the railroad company is not excused if the traveler be shown to have been guilty of a mere want of ordinary care; nor if he be shown to have been guilty of gross negligence, although the statute so declares; he must be shown to have been guilty of willfulness, and intentional disregard of all care.

"The Court was in error in not applying the doctrine declared in the case of *B. & O. R. Co. v. Goodman,* 275 U. S., 66, 48 S. Ct., 24, 72 L. Ed., 167, 56 A. L. R., 645. That case declares, quoting syllabus: 'One who drives upon a railroad track relying upon not having heard a train or any signal and taking no further precaution, does so at his own risk. If he can not otherwise be sure whether a train is dangerously near, the driver must stop and get out of his vehicle before attempting to cross.'

"The Court said: 'It is true * * * that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the Courts.'

"This standard, which is based on the fundamental conception of the mutual rights and the mutual obligations of the respective parties as judged by the circumstances of the situation, has been rejected by this Court on the ground that it conflicts with Sections 4903 and 4925, and that they furnish the sole standard of conduct in this State; it is expressly so ruled in the cases of *Key v. Car. & N. W. R. Co.,* 150 S. C., 29, 147 S. E., 625, and *Holladay v. A. C. L. R. Co.,* 150 S. C., 243, 147 S. E., 927, hereinbefore cited. No federal question was involved in either of those cases, but the Court recognized the principle that where a federal ques-

tion was involved the rulings of the Federal Supreme Court must be respected and are controlling. The vital issue is whether the rule announced in the *Goodman case* was intended by the Supreme Court as a declaration of the rights and obligations of the respective parties touching the operation of an interstate train at grade crossings. It certainly defines with particularity the duty of the traveler approaching it, in reference to precautions which he must take; precautions intended not only for his protection but for the protection of the property of the railroad company and the employees and passengers who may be upon the train; the conduct of the traveler necessarily affects the conduct of the train employees who have the right to act upon the assumption that the traveler will respond to his obligations. Besides, it directly affects the conduct of the train employees as is demonstrated by the following extract: 'When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. *He knows that he must stop for the train not the train stop for him.*'

"There is no question but that the train at this time was an instrumentality of interstate commerce and that the engineer was engaged in such commerce.

"The fact that a state regulation will to some extent effect interstate commerce does not necessarily invalidate such regulation. The rule is thus declared in *Atlantic Coast Line R. Co. v. Georgia,* 234 U. S., 280, 34 S. Ct., 829, 831, 58 L. Ed., 1312: 'In thus deciding, the Court applied the settled principle that, in the absence of legislation by Congress, the states are not denied the exercise of their power to secure safety in the physical operation of railroad trains within their territory, even though such trains are used in interstate commerce. * * * It was not intended that, pending Federal action, the use of such agencies, which, unless carefully guarded, was fraught with danger to the community, should go unregulated, and that the states should be

without authority to secure needed local protection. *The requirements of a state, of course, must not be arbitrary, or pass beyond the limits of a fair judgment as to what the exigency demands.* \* \* \* "

"The Court quotes from *Smith v. Alabama,* 124 U. S., 465, 8 S. Ct., 564, 31 L. Ed., 508, as follows: 'The rules prescribed for their construction and for their management and operation, designed to protect persons and property, otherwise endangered by their use, are strictly within the limits of the local law. They are not *per se* regulations of commerce; it is only when they operate as such in the circumstances of their application, and conflict with the expressed or presumed will of Congress exerted on the same subject, that they can be required to give way to the supreme authority of the Constitution.' Citing cases.

"See, also, *Nashville, C. & St. L. R. Co. v. White,* 278 U. S., 456, 49 S. Ct., 189, 73 L. Ed., 452; *Truax v. Corrigan,* 257 U. S., 312, 42 S. Ct., 124, 66 L. Ed., 254, 27 A. L. R., 375.

"From this it is fair to conclude that Section 4903, which prescribes the signals to be given by a railroad corporation as its train approaches a highway crossing, is a police regulation, within the legislative power of a state, notwithstanding its direct effect upon trains employed in interstate commerce. The vice is, not in that section, but in Section 4925 and the decisions of this Court interpreting it, in antithesis to the rule declared in the *Goodman case.*

"While the classification of railroads for many purposes is justified, it is invariably held that the regulation must be based upon rational grounds.

"In *Gulf, C. & S. F. R. Co. v. Ellis,* 165 U. S., 150, 17 S. Ct., 255, 41 L. Ed., 666, it was held, quoting syllabus: 'The mere fact of classifications is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and in all cases it must appear not merely that a classification has been made, but also that it

is based upon some reasonable ground—something which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection.'

"We think that Section 4925, taken in connection, as we must do, with the interpretation of it sanctioned by this Court, above referred to, has no reasonable connection with the police regulation of Section 4903; it is divorced entirely from the regulations of that section, and appears to have been intended to make it easy for the injured party to recover damages and difficult for the railroad company to defend the suit. It cannot be successfully contended that the effect of the statute, Section 4925, was simply to change a rule of evidence. In *Easterling Lumber Co. v. Pierce,* 235 U. S., 380, 381, 35 S. Ct., 133, 59 L. Ed., 279, it was held that a state statute which cuts off no substantive defence, but simply provides a rule of evidence controlling the burden of proof, does not deny due process of law. According to this rule it is conceded that so far as Section 4903 created a *prima facie* presumption that section is constitutional; but the evident purpose and manifest effect of Section 4925 is to cut off the very substantive defence under the common-law rule of contributory negligence which would otherwise avail the defendant.

"For another reason the statute, as interpreted, is an interference with interstate commerce:

"Under it the traveler is not to be held guilty of contributory negligence unless the defendant company makes it appear that in addition to the mere want of ordinary care he has been guilty of gross or willful negligence or a violation of law; to make it appear that he was guilty of gross negligence, the railroad company must show that he did not exercise even slight care, for gross negligence is the absence of that degree of care; hence the traveler is excused by the exercise of slight care; in other words, that is all that he is required to do.

"In this day of heavy automobiles and incorporated passenger buses and freight truck lines, some of them with trailers transporting 80 bales of cotton, 40,000 pounds, is the danger of damage to the interstate train by a collision with them so negligible as to require of the driver only slight care to avoid it? Are the rights of the engineer and trainmen protected by so lax a requirement? Has the passenger upon a through train, interstate commerce, no right to demand even ordinary care on the part of the traveller to avoid a collision? Within the last year, upon a western railroad, a passenger train collided with a loaded freight truck at a crossing; the engine and passenger coaches were derailed and thirty passengers killed or injured. Did the truck driver comply with the law or with the dictates of humanity by exercising slight care? That may have been the rule in the days of horse-drawn vehicles, but not now.

"By its unjust, unfair, and unreasonable discriminations against railroads in favor of travelers on the highway in every particular herein discussed, this statute denies to railroads the equal protection of the laws and by such denial takes the property of the railroads without due process of law and turns it over to plaintiffs alleging injury in crossing accidents. Unless these two protecting clauses of the Fourteenth Amendment have become 'a mere rope of sand, in no manner restraining state action' (*Gulf, etc., R. Co. v. Ellis, supra*), they compel the conclusion that this statute transcends the power of the state, and must therefore be declared void.

"The charge upon gross negligence was clearly erroneous: 'Now gross negligence is the failure to exercise slight care; the failure to exercise slight care. As distinguished from ordinary negligence, simple negligence, it is the intentional, conscious failure to do a thing that is incumbent upon one to do, or the doing of a thing intentionally that one ought not to do.'

" 'Gross negligence,' as his Honor charged, is the absence of slight care. It is a species of negligence which means inadvertence, the antipode of an intentional act.

"The judgment of this Court should be that the judgment of the Circuit Court be reversed and the case remanded for a new trial."

MR. S. W. G. SHIPP, CIRCUIT JUDGE (concurring) : I concur in the opinion prepared in this case by his Honor, Associate Justice Thomas P. Cothran, which has been adopted by his Honor, Judge William H. Grimball, as his opinion in this case, and especially on the ground that the statute under review discriminates against the railroad company in favor of the engineer in preserving to the engineer, through whom the railroad company acts, all the defenses allowed by the common law while denying the railroad company such defenses. This is clearly an unreasonable discrimination, and in my opinion is a direct violation of the Fourteenth Amendment of the Constitution of the United States.